**PARK LAKE RESOURCES LIMITED LIABILITY CORPORATION and Park County Mining Association, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; United States Forest Service (USFS); Daniel Glickman, Secretary of Agriculture; Michael P. Dombeck, Chief, USFS; and Elizabeth Estill, Region Forester, Region II, USFS, Defendants.**

Civil Action No. 96–Z–1838.

United States District Court, D. Colorado.

Nov. 18, 1997.

James Barry Shupe, William Perry Pendley, Mountain States Legal Foundation, Denver, CO, for plaintiff.

Joel D. Armstrong, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for defendants.

## ORDER AND JUDGMENT

WEINSHIENK, District Judge.

Plaintiffs challenge defendants' designation of 695 acres atop Hoosier Ridge as a Research Natural Area (RNA). RNAs are lands that are permanently protected for the

purposes of maintaining biological diversity, conducting research, and fostering education. The United States Forest Service (USFS) has established approximately 250 RNAs nation wide. The Hoosier Ridge RNA is located along the Continental Divide in Park and Summit Counties in the State of Colorado at an elevation of approximately 12,000 to 13,-000 feet above sea level. It is approximately one half mile east of Colorado Highway 9 at the summit of Hoosier Pass near Breckenridge, Colorado. Prior to its designation as an RNA, the area was part of the Pike and Arapaho National Forests.

The Hoosier Ridge area was first recognized as a valuable resource in 1981, when the State of Colorado registered it as part of the Colorado Natural Areas Program. Because of the excellent condition of the area and its unique plant populations that typify an alpine ecosystem, the federal government recommended that the area be designated as an RNA in 1984. Of particular importance is the fact that the area is home to *Eutrema penlandi*, a species of plant protected under the Endangered Species Act, as well as nine other rare and threatened plant species. The Hoosier Ridge RNA also contains plant associations that are not represented in the regional RNA system. Further, as pictorial exhibits presented to the Court demonstrate, the area is in relatively pristine condition.

The original record for the establishment of the Hoosier Ridge RNA was completed, and the Chief of USFS first established the Hoosier Ridge RNA in 1991. That decision was appealed by several mining groups including plaintiff Park County Mining Association. As a result, the Chief withdrew his decision and ordered the Rocky Mountain Regional Forester to reevaluate the proposal for the Hoosier Ridge RNA.

In May 1993, the Bureau of Land Management (BLM), at the request of USFS, published a notice in the Federal Register, segregating the proposed Hoosier Ridge RNA for two years during which time location and entry under public laws was prohibited. This segregation had the practical effect of prohibiting new mining claims. USFS used the two years to prepare an Environmental Assessment (EA) of the area, which was completed in May 1995. The two year moratorium on new mineral claims automatically

expired in May 1995, as well. Thereafter, representatives of Park Lake Resources, LLC and Park County Mining Association entered the proposed RNA and located mineral claims within its boundaries. These claims were recorded and filed with the State of Colorado in October 1995, and with BLM in November 1995. Very shortly thereafter, on December 5, 1995, the Regional Forester of the Rocky Mountain Region, USFS, issued a Decision Notice/Designation Order establishing the Hoosier Ridge RNA. Plaintiffs appealed, and on March 28, 1996, the Chief of USFS affirmed the decision. The Assistant Secretary of the United States Department of Agriculture refused to review the decision of the Chief, and plaintiffs filed their Complaint in this Court. Oral argument was heard on July 18, 1997.

Plaintiffs claim that USFS's decision to designate the Hoosier Ridge RNA was in violation of the Administrative Procedure Act (APA). Under the APA, agency action may be overturned by the Court only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). An agency's decision is arbitrary and capricious if it is not based on relevant factors or has no rational basis in the record. *Franklin Savings Association v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1147–48 (10th Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Thus, the Court's limited role is to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Where, as in this case, the challenged decision implicates the agency's technical expertise, the Court must be especially deferential. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861–62, 104 L.Ed.2d 377 (1989); *Franklin Savings Assoc.,* 934 F.2d at 1147.

Plaintiffs argue that USFS's interpretation of two regulations, 36 C.F.R. §§ 219.25 and

251.23, is arbitrary and capricious and contrary to the plain regulatory language. Section 219.25 provides in part:

> Forest planning shall provide for the establishment of Research Natural Areas (RNA's). Planning shall make provision for the identification of examples of important forest, shrubland, grassland, alpine, aquatic, and geologic types that have special or unique characteristics of scientific interest and importance and that are needed to complete the national network of RNA's.... Authority to establish RNA's is delegated to the Chief at ... 36 C.F.R. [§ ]251.23.

In pertinent part, 36 C.F.R. § 251.23 states:

> [W]hen appropriate, the Chief shall establish a series of research natural areas, sufficient in number and size to illustrate adequately or typify for research or educational purposes, the important forest and range types in each forest region, as well as other plant communities that have special or unique characteristics of scientific interest and importance. Research Natural Areas will be retained in a virgin or unmodified condition except where measures are required to maintain a plant community which the area is intended to represent....

Plaintiffs' appeal focuses on the language of 36 C.F.R. § 251.23 which requires that "Research Natural Areas will be retained in a virgin or unmodified condition." According to plaintiffs, the designation of the Hoosier Ridge RNA is inconsistent with the plain meaning of § 251.23 because at the time the RNA was designated it was not in "a virgin or unmodified condition" due to the existence of mining claims. As exhibits to their opening brief, plaintiffs provided the Court with pictures of mining activities in the RNA.[1] Plaintiffs believe that this evidence demonstrates that the land has been tainted, and thus is not properly designated as an RNA.

Plaintiffs also contend that USFS's failure to recognize the presence of existing mining

claims within the RNA was a failure to consider all the relevant factors. In the EA, USFS found that the modification to the RNA from mining activities "has not been extensive enough to interfere with qualities that make the area suitable for RNA designation." Plaintiffs argue that this determination could not have been properly made, given that USFS did not specifically acknowledge the Brown Ptarmigan claim which has been in existence since at least 1974, or the mining claims which were filed by plaintiffs in October and November of 1995.

Defendants assert that the regulations set forth a two-tiered approach to designation and management of RNAs. First, the regulations provide threshold criteria for determining when designation is appropriate. In this regard, they require that USFS choose areas that typify "important forest and range types in each forest region, as well as other plant communities that have special or unique characteristics of scientific interest and importance," 36 C.F.R. § 251.23, as a component of a national network of RNAs which represent the range of forest ecosystems, 36 C.F.R. § 219.25. Second, the regulations specify management criteria for the RNA once it is designated. According to defendants, the sentence on which plaintiffs rely actually provides direction for managing the area once it has been designated as an RNA. The language in question provides that RNAs "will be *retained* in virgin or unmodified condition." 36 C.F.R. § 251.23 (emphasis added). Defendants maintain that the use of the word "retained" and the clear language of the entire sentence, when viewed as a whole, dictates a retention and management prescription, and not a requirement for selecting the RNA area.

After careful review of the record, the exhibits, the parties' briefs, the arguments made by counsel, and the applicable law, the Court has concluded that plaintiffs' interpretation of the regulations is inconsis-

---

1. Plaintiffs maintain that the Court can consider these pictures and other documents which are not part of the Administrative Record because the Administrative Record is insufficient, and thus the Court can consider other evidence for purposes such as background information and to determine if the agency considered all the rele-

vant factors in making its determination. *See Franklin Savings Assoc. v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir.1991). Although the Court does not believe that the Administrative Record is insufficient, plaintiffs' exhibits were considered since defendants never objected to their submission.

tent with the plain meaning of the regulatory language. The Court will therefore review defendants' decision to designate the Hoosier Ridge RNA under the two-tiered approach which is contemplated by the regulations and articulated by defendants. Specifically, the Court agrees with defendants' conclusion that the mandate in 36 C.F.R. § 251.23 that RNA's be "retained in virgin or unmodified condition" concerns management of the RNA and is not a criteria for designation. In addition, plaintiffs' hypertechnical reading of the words "virgin or unmodified condition" would lead to absurd results because there are probably very few, if any, areas in the National Forest System, or on the planet Earth, that are absolutely untouched by humankind. Consequently, plaintiffs' interpretation not only is contrary to the plain statutory language, but also would disqualify almost all federal land from designation as an RNA.

■ The record before the Court reveals that the Hoosier Ridge RNA meets the criteria for establishing an RNA as set forth in 36 C.F.R. §§ 219.25 and 251.23. Both the administrative record and the supplementary exhibits provided to the Court by plaintiffs support USFS's determination that the area is a largely undisturbed example of an alpine ecosystem. While the Hoosier Ridge RNA is not a completely virgin area, it is in excellent condition. It contains numerous rare and threatened plant species. Further, because there is no other RNA that represents an alpine ecosystem, the Hoosier Ridge RNA will act as an important component of the national network of RNAs. Given these facts, the Court concludes that defendants' decision to designate the Hoosier Ridge RNA was in compliance with the regulatory requirements because the Hoosier Ridge RNA typifies an alpine ecosystem, which is an "important forest and range type" that has "special or unique characteristics of scientific interest and importance." *See* 36 C.F.R. § 251.23.

■ With regard to the mining activities that plaintiffs allege have left the area molested and modified, the Court finds that USFS considered the mining activities as part of the EA and properly determined that the "[m]odification has not been extensive enough to interfere with qualities that make the area suitable for RNA designation." Plaintiffs have not provided any basis for this Court to reverse this determination. A few hand dug holes and an old mine shaft that only affect less than five percent of the nearly 700 acre RNA, are not significant enough to undermine the scientific significance of this long recognized important alpine area. Likewise, the alleged oversight of the Brown Ptarmigan claim is inconsequential. The administrative record conclusively demonstrates that USFS representatives carefully studied the entire area. If the Brown Ptarmigan claim left visible damage, then it was noted and accounted for in the EA, even though not by its specific name. Because the determination of the condition of the area was based on USFS's technical expertise, the Court will not second guess the agency's judgment.

■ The Court further holds that USFS's failure to discover plaintiffs' newly filed claims prior to designation was not unreasonable. These claims were filed by plaintiffs in October and November 1995, after the EA was completed and after USFS had completed its review of the BLM index of mining claims. Plaintiffs did not notify USFS of their new claims even though they were aware that the EA had been completed and that RNA designation was imminent. Accordingly, the Court finds that USFS made a reasonable and prudent study of the BLM index of mining claims, and that the agency's failure to discover plaintiffs' last minute claims was not unreasonable and did not amount to a failure to consider all relevant factors. It is not reasonable for the agency to have to recheck all the relevant records on a daily basis up until the day the designation order is signed.[2]

2. RNA designation does not affect mineral exploration and development of perfected mining rights within the RNA, but rather merely prohibits any new claims from being explored or established. Accordingly, the eleventh hour claims filed by plaintiffs will be treated like all other mining claims that were properly recorded prior to the RNA designation, and may be mined provided that plaintiffs' claims are perfected and plaintiffs file a plan of operation with USFS. The Court rejects plaintiffs' suggestion that the Court substitute its judgment for that of USFS and carve out plaintiffs' mineral claims from the RNA area, thereby creating a Swiss cheese effect.

In conclusion, the Court holds that the designation of the Hoosier Ridge RNA was not arbitrary and capricious, or in excess of statutory authority, but rather reasonable and in accordance with the law. *See* 5 U.S.C. § 706(2). USFS's interpretation of 36 C.F.R. §§ 219.25 and 251.23 comports with the plain language. *Id.* More specifically, the mandate in § 251.23 that RNA's be "retained in virgin or unmodified condition" concerns *management* of the RNA and is not a criteria for designation. Given that USFS's decision was based on a consideration of the relevant factors and there was no error of judgment, let alone no clear error of judgment, the Court will defer to the agency's expertise. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861–62, 104 L.Ed.2d 377 (1989). Accordingly, it is

ORDERED that defendants' decision to designate the Hoosier Ridge RNA is affirmed. It is

FURTHER ORDERED that judgment is entered in favor of defendants and against plaintiffs, and plaintiffs' Complaint and cause of action are dismissed with prejudice.