**PUBLISH**
**F I L E D**
**NOV 19 1999**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

PARK LAKE RESOURCES LIMITED LIABILITY
COMPANY; PARK COUNTY MINING
ASSOCIATION,

      Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE; UNITED STATES FOREST
SERVICE; DANIEL GLICKMAN, Secretary of
Agriculture; MICHAEL P. DOMBECK, Chief,
United States Forest Service; ELIZABETH A.
ESTILL, Regional Forester, Region II, United
States Forest Service,

      Defendants-Appellees.

No. 98-1020

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 96-Z-1838)

William Perry Pendley of Mountain States Legal Foundation, Denver, Colorado,
for Plaintiffs-Appellants.

Andrew C. Mergen, Attorney (Lois J. Schiffer, Assistant Attorney General; Ellen
Durkee and John A. Bryson, Attorneys, with him on the brief), Department of
Justice, Environment and Natural Resources Division, Washington, D.C., for
Defendants-Appellees.

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **KELLY**, Circuit Judges.

_____

**SEYMOUR**, Chief Judge.

_____

Park Lake Resources, LLC, and Park County Mining Association (collectively Park Lake) filed this action challenging the United States Forest Service's designation of 695 acres straddling Hoosier Ridge in Colorado as a Research Natural Area (RNA) pursuant to 36 C.F.R. § 251.23 (1998).[1]  Park Lake contends the designation is arbitrary, capricious and contrary to plain regulatory language in violation of the Administrative Procedure Act (APA), 5 U.S.C. §706(2).  Because we conclude Park Lake has failed to establish that this issue is ripe for review, we dismiss the appeal and vacate the judgment below.  *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1421 (10th Cir. 1990) (holding case not ripe, dismissing appeal, and vacating judgment below).

**I.**

A research natural area (RNA) is selected by the Chief of the Forest

_____

[1]  We cite in this opinion to the 1998 version of the Code of Federal Regulations. The applicable provisions have not been significantly amended during the relevant time period.

Service to "illustrate adequately or typify for research or educational purposes, the important forest and range types in each forest region" and must be "retained in a virgin or unmodified condition." 36 C.F.R. § 251.23. The Hoosier Ridge area contains a unique alpine ecosystem that includes ten rare and threatened plant species, one of which is protected under the Endangered Species Act. Because of these unique features, the Forest Service initially recommended this area for RNA designation in 1984. After completing the necessary administrative requirements, the Forest Service designated the area an RNA in 1991.

Several mining groups, including Park County Mining Association, filed an administrative appeal challenging the RNA designation, claiming it would foreclose any current and future mining activities in the area. In light of these appeals, the Chief of the Forest Service withdrew the RNA designation and ordered its reevaluation by the Regional Forester. During the reevaluation process, the Bureau of Land Management (BLM) segregated the proposed RNA area for two years from location and entry under the public mining laws. This segregation period expired in May 1995, at which time Park Lake entered the area and located mineral claims there. Those claims were recorded and filed with the State of Colorado in October and with the BLM in November.

The Forest Service issued an Environmental Assessment (EA) for the proposed Hoosier Ridge RNA in May 1995 and adopted Alternative 2, which

recommended the establishment of an RNA.  Accordingly, on December 5, the Forest Service issued another final Designation Order designating Hoosier Ridge as an RNA.  The adopted Alternative 2 of the EA required road closures and barricades to prevent motorized access in the RNA.  These requirements were consistent with the Forest Service's RNA Management Area Prescription for the Rocky Mountain Region, which states that "motorized use is prohibited, except when necessary to provide research or educational access."  *See* Aplt. App. at 134.

The Forest Service was unaware of Park Lake's recent mining claims on Hoosier Ridge at the time it made the designation order.  Park Lake filed an unsuccessful administrative appeal with the Forest Service, claiming it acted arbitrarily and capriciously in making such a designation without evaluating the presence of Park Lake's mining claims.   Park Lake then filed this complaint in federal district court.  *See Park Lake Resources v. United States Dep't of Agric.,* 979 F. Supp. 1310 (D. Colo. 1997).

Park Lake's complaint sought review of a "final agency action" pursuant to the APA, 5 U.S.C. § 704.  Park Lake requested a declaration that the RNA designation was arbitrary, capricious, and not in accordance with the law, a permanent injunction enjoining the Forest Service from implementing the RNA designation, and a permanent injunction enjoining the Forest Service from

denying Park Lake motorized access to its mining claims or otherwise restricting Park Lake's mining activities within the Hoosier Ridge. The district court held that the RNA designation met the regulatory criteria as set forth in 36 C.F.R. §§ 219.25 and 251.23. *See Park Lake*, 979 F. Supp. at 1314. The court further concluded that the Forest Service was aware of and considered existing mining activities in the area before determining that the mining modifications were not sufficiently extensive to interfere with the RNA designation. *See id.* The district court therefore held that the designation of the RNA was not arbitrary and capricious. *See id.* at 1315. Park Lake appeals that decision.

The Forest Service argues for the first time on appeal that Park Lake's claim is not yet ripe because it has failed to show any present injury caused by the RNA designation. Although this issue was not raised in the district court, we consider its merits because ripeness affects this court's subject matter jurisdiction, *see Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732 (1998) (case not justiciable if not ripe for review); *see also Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 243 (10th Cir. 1991) (whether claim is ripe for review bears on court's subject matter jurisdiction under Article III of Constitution), and may be raised at any time, *see Keyes v. School Dist. No. 1*, 119 F.3d 1437, 1444 (10th Cir. 1997).

**II.**

We initially note that the burden is on the plaintiff to provide evidence establishing that the issues are ripe for review. *See CSG Exploration Co. v. FERC*, 930 F.2d 1477, 1486 (10th Cir. 1991). Whether or not an agency decision is ripe for judicial review is determined by examining the fitness of the issues for judicial decision and the hardship caused to the parties if review is withheld. *See Ohio Forestry*, 523 U.S. at 733 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)); *Mobile Exploration & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1197 (10th Cir. 1999). In this case, Park Lake has failed to convince us that the issue is fit for review or that immediate review is necessary to avoid injury.

**A. Fitness of the issues for judicial review**

A vital aspect of the requirement that issues be fit for review is that the suit challenge "final agency action." *See, e.g., Mobil Exploration*, 180 F.3d at 1197 (citing APA, 5 U.S.C. § 704, and *Abbott Labs.*, 387 U.S. at 149-54). Although the RNA designation at issue here is deemed a final administrative action by regulation, *see* 36 C.F.R. § 217.17(g), it is nevertheless still subject to agency activity with regard to Park Lake's mining activities.

It is important to note that mining activities may occur on RNA land. *See* 36 C.F.R. §§ 251.23, 251.50. Anyone wishing to conduct mining activities on any national forest land "which will likely cause a significant disturbance of surface resources" must first file a proposed plan of operations with the Forest Service. 36 C.F.R. § 228.4(a). Park Lake has not yet submitted a proposed plan of operations, claiming that it attempted to do so but the district ranger would not accept it while this litigation was in progress.

The Forest Service has several alternatives available to it when faced with a proposed plan of operations for mining activities conducted on RNA land. *See* 36 C.F.R. § 228.5; Supp. App. of Fed. Aplee. at 76 (Forest Service Manual, Standards and Policy Guidelines for RNAs). Once presented with Park Lake's proposed plan of operations, the Forest Service may approve it, may require modification, or may even modify or withdraw the RNA designation.[2] Moreover, the Forest Service may restrict Park Lake's mining activities for reasons unrelated

---

[2]Specifically, Standard 4.3.2 of the Forest Service Manual, Standards & Policy Guidelines for RNAs, states:

> Mineral and oil entry uses and prospecting ideally should be excluded from an Area. Where exclusion is feasible it should be obtained. Otherwise, effort should be directed to the best alternative which may entail: (1) promote entry use by nonsurface or minimal surface disturbance; (2) reduce entry and prospecting impacts; (3) acquire an Area of near-equivalent character and value which has less entry potential to serve as an alternate in the event of entry and its impacts.

Supp. App. of Fed. Aplee. at 76.

to the fact that the mining claim is on RNA land.

Disregarding the land's RNA designation, the Forest Service has a plethora of statutory and regulatory provisions governing national forests upon which it might rely when and if it requires modifications prior to its aproval of Park Lake's plan of operations. *See, e.g.,* 16 U.S.C. § 551 (Forest Service must protect national forest land from destruction and depredation); 16 U.S.C. § 478 (miners must comply with rules and regulations covering national forests); 16 U.S.C. § 1604(i) (permits relating to use and occupancy of national forest system lands must be consistent with the land management plan for that specific forest); 36 C.F.R. § 228.4(f) (mining operations may require environmental analysis considering varying environmental impacts); 36 C.F.R. § 228.5 (Forest Service may require changes in plan necessary to "meet the purpose of the regulations in this part"); 36 C.F.R. § 228.8 (mining operations on forest land must be conducted to minimize adverse environmental impacts); 36 C.F.R. § 228.12 (when reviewing means of access to mining claims in proposed plans, Forest Service must specify all "conditions reasonably necessary to protect the environment and forest surface resouces"). *See generally* Joel A. Ferre, *Forest Service Regulations Governing Mining: Ecosystem Preservation versus Economically Feasible Mining in the National Forests*, 15 J. Energy Nat. Resources & Envtl. L. 351 (1995). Indeed, the Forest Service has relied on these provisions, as well as many other

considerations, in a variety of cases where it restricted mining activities on national forest land. *See, e.g., Duncan Energy Co. v. United States Forest Service*, 50 F.3d 584, 586 (8th Cir. 1995) (Forest Service required conditions and protective measures on proposed plan of mining operations citing requirements of National Environmental Protection Act, 16 U.S.C. § 551, and 36 C.F.R. § 251.50(a)); *Clouser v. Espy*, 42 F.3d 1522, 1529-30, 1533-36 (9th Cir. 1994) (Forest Service regulated means of access to mining claims on national forest citing its authority under 16 U.S.C. § 251 and 16 U.S.C. § 478; declined to review mining plan of operations until BLM determined claim's validity citing agency rule in Forest Service Manual; required modifications prior to approval of mining plan of operations citing its authority under 36 C.F.R. § 228.5(a)); *United States v. Weiss*, 642 F.2d 296, 298 (9th Cir. 1981) (Forest Service has power to regulate mining operations on national forest land under 16 U.S.C. §§ 478 and 551); *United States v. Richardson*, 599 F.2d 290, 292 (9th Cir. 1979) (Forest Service sought injunction of mining operations on forest land causing unwarranted surface destruction under 30 U.S.C. § 612); *Baker v. United States Dep't of Agriculture*, 928 F. Supp. 1513, 1515 (D. Idaho 1996) (Forest Service required restrictions on mining operations plan citing requirements of Endangered Species Act and the National Environmental Policy Act). Thus, any attempt to foresee which specific regulation or statute the Forest Service might rely upon when reviewing Park

Lake's plan is an exercise in speculative gymnastics.

Generally, the Forest Service's review of proposed plans of operation for mining activities is guided by the specific management plan for that forest area. *See* 16 U.S.C. § 1604(i). The two forest management plans covering the Hoosier Ridge area have been amended to provide for management of the RNA at issue here. S*ee* Aplt. App. at 196. Although neither plan is in the record, it is apparent that these plans will guide Forest Service management of the Hoosier Ridge RNA and will affect the review and approval of any proposed plan of mining operations.

Park Lake's claim is thus similar to that of the Sierra Club in *Ohio Forestry*, 523 U.S. at 728 (challenge to Forest Service's management plan guiding all natural resource management activities in a national forest). In *Ohio Forestry*, the Sierra Club challenged a Forest Service land resource management plan on the ground that it allowed excessive logging and clear cutting. The Court pointed out that the Forest Service had to take further site-specific action using the forest plan as a management device once faced with proposed logging activities. *See id.* at 734 (before any logging could be allowed, Forest Service had to "focus on a particular site, propose a specific harvesting method, prepare an environmental review, permit the public an opportunity to be heard, and (if challenged) justify the proposal in court"). The Court noted that the agency could revise the

management plan in response to site-specific proposals and that those revisions might negate the Sierra Club's claimed injuries. *See id.* at 735-36. The Court therefore held the issue not ripe for review from either the agency's or the court's perspective.

Just as with the Forest Service guidelines for RNAs, the regulations at issue in *Ohio Forestry* required the Forest Service to revise the forest plan during implementation as appropriate. *See id. at 735*; *cf.* Supp. App. of Fed. Aplee. at 76 (Standards and Policy Guidelines for RNAs, Standard 4.3.2). The fundamental similarities between these two cases convince us the issue here is similarly not fit for review. *See also Texas v. United States*, 523 U.S. 296, 300 (1998) (claim not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all); *Yeutter*, 911 F.2d at 1420 (adjudication should be postponed where harm and justification for action are both contingent on future administrative action).

## B. Harm to parties caused by withholding review

Nor are we persuaded Park Lake will be harmed if we withhold review. Our inquiry into harm takes into account financial, operational, and legal consequences flowing from the agency action. *See Mobil Exploration*, 180 F.3d at 1203. Park Lake has failed to establish that it has felt any effects whatsoever

from the RNA designation itself. Park Lake's only claimed injury is from the Forest Service's refusal to review its proposed plan. The Forest Service declined to review the plan due to this litigation over the designation, however, not because of the designation itself. Since Park Lake's claimed injury is not caused by the agency action it challenges, Park Lake has failed to show how it is harmed by withholding review of that action. *See Mobil Exploration*, 180 F.3d at 1203-04 ("procedural wrangling" over agency action does not, standing alone, create ripeness); *CSG Exploration Co.*, 930 F.3d at 1486 (unsupported assertions that agency action chilled fuel exploration were insufficient to conclude issue ripe for review). *Cf. Rocky Mountain Oil and Gas Ass'n v. Watt*, 696 F.2d 734, 741-43 (10th Cir. 1982) (pre-enforcement challenge was ripe where plaintiffs presented extensive evidence showing concrete financial harm directly caused by agency action).

Moreover, Park Lake may seek review of this issue at a later date. If the Forest Service does in fact place restrictions upon Park Lake's mining activities, Park Lake may challenge those restrictions and the RNA designation in one suit. *See, e.g., Ohio Forestry*, 523 U.S. at 734-35 (Sierra Club could bring its claim at a later time when plan was applied in a site-specific manner); *Clouser*, 42 F.3d at 1527 (after Forest Service barred motorized access to mining claim because of

-12-

claim's location in wilderness area, plaintiffs challenged the restrictions and agency's underlying authority as ultra vires and arbitrary and capricious).

Similarly, in *Lujan v. National Wildlife Fed'n,* 497 U.S. 871 (1990), the Supreme Court held that withholding review of an environmental group's challenge to a "land withdrawal review program" was harmless. The program there was much like a forest management plan in that it did not have an immediate effect on the plaintiffs, and the agency was required to apply the review program to specific proposed logging plans on specific sites. *See id.* at 891-92. The Court also held that an individual plaintiff's challenge to the review program for allowing mining activities was not ripe at that time but could be brought later. The Court explained:

> [A]ny person seeking to conduct mining operations . . . must first obtain approval of a plan of operations. . . . If that permit is granted, there is no doubt that agency action ripe for review will have occurred; nor any doubt that, in the course of an otherwise proper court challenge, [Plaintiff] would be able to call into question the validity of the classification order authorizing the permit. However, before the grant of such a permit, . . . it is impossible to tell where or whether mining activities will occur. Indeed, it is often impossible to tell from a [land] classification order alone whether mining activities will even be permissible.

*Id.* at 892-93 n.3. *See also* II KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 15.16 (3d ed. 1994) (discussing *Lujan* and stating that challenges to agency adoption of programs are unripe). This reasoning bolsters our determination that Park Lake has not yet been injured by

-13-

the bare RNA designation at issue here and may bring this challenge when it has been directly affected.

The Forest Service's RNA designation did not command Park Lake to do anything, does not subject Park Lake to any criminal or civil liability, and creates neither legal rights nor obligations. *See Ohio Forestry*, 523 U.S. at 733. Park Lake has simply failed to show any harm whatsoever stemming from delayed review until the Forest Service's action on a proposed mining plan is complete.

The purpose of the ripeness doctrine is to "protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (quoting *Abbott Labs.* at 148-49). In this case, although the RNA designation has been "formalized," Park Lake will not feel any effects of the designation until the Forest Service reviews its submitted plan and requests or requires any restrictions upon its mining activities. Waiting until that occurs preserves and protects the administrative process and meets our prudential concerns about interfering with that process or deciding hypothetical scenarios. *See, e.g.*, *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163-165 (1967) (although agency action was final and issues were purely legal, challenge to FDA regulation was not ripe since later review was possible and the effect of the regulation on the plaintiffs was purely speculative); *Yeutter*, 911 F.2d at 1416 (courts should use caution against decision

where harm is contingent upon uncertain or speculative future administrative action).  Review now could result in piecemeal challenges, and further agency action could render this challenge moot.  *See id.* at 1418.

**III**

For these reasons, we conclude the issues presented here are not yet ripe. We therefore **DISMISS** the appeal, **VACATE** the judgment of the District Court, and **REMAND** with instructions to dismiss the complaint as not ripe.