**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

FRIENDS OF MAROLT PARK,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION; RODNEY E.
SLATER, in his official capacity as
Secretary of the U.S. Department of
Transportation,

      Defendants-Appellees.

------------------------

STATE OF COLORADO,

      Amicus Curiae.

No. 02-1480

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-B-978)**

---

Lori Potter, Kaplan, Kirsch & Rockwell, LLP, Denver, Colorado, for Plaintiff-
Appellant.

Ellen J. Durkee, Appellate Section, Environment & Natural Resources Division,
Department of Justice, Washington, D.C. (Thomas L. Sansonetti, Assistant
Attorney General, Washington, D.C., David Ortez, Assistant Chief Counsel, U.S.
Department of Transportation, San Francisco, California, with her on the brief),
for Defendants-Appellees.

Ken Salazar, Attorney General, Alan J. Gilbert, Solicitor General, Harry S. Morrow, First Assistant Attorney General, Denver, Colorado, filed an amicus curiae brief for the State of Colorado.

---

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

In this case, plaintiff-appellant, Friends of Marolt Park, raises challenges under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f and § 4(f) of the Transportation Act, 49 U.S.C. § 303(c), to a Record of Decision ("ROD") issued by defendant-appellee, the United States Department of Transportation.  The ROD authorized two alternative construction plans for a transit improvement project near Aspen, Colorado.  Under one plan, the "phased approach," highway improvements will be constructed with two additional lanes dedicated to buses.  The bus lanes will be removed at a later date if funding becomes available for the construction of a light rail transit system.  Under the second plan, the "non-phased approach," the highway improvements and the light rail system will be built at the same time without construction of the bus lanes.  Neither of these plans can go forward without further action by local voters.

Friends of Marolt Park ("FMP") argues that the Department of Transportation ("USDOT" or "the Agency") violated § 4(f) by approving the phased approach because immediate construction of the light rail system will have less environmental impact on the Marolt-Thomas Open Space, a publicly owned park. FMP also argues that the requirements of NEPA have not been met because the alternatives authorized by the Record of Decision altered the outcome projected by the Final Environmental Impact Statement without allowing the public an opportunity to comment. The district court denied FMP's requests for relief. We have jurisdiction under 28 U.S.C. § 1291. Because we conclude that the § 4(f) issue is not ripe for decision, we **remand** to the district court with instructions to **vacate** the relevant portion of its judgment. We **affirm** the district court's judgment regarding the NEPA claim.

## II. BACKGROUND

State Highway 82 is a two lane highway that serves as the primary means of access to the town of Aspen, Colorado and the ski resorts in the area. Local debate over expanding or improving the highway has continued without resolution since the 1960s. The road is frequently congested and has a high accident rate in comparison with other state roadways. In 1995, the USDOT circulated to the public a draft Environmental Impact Statement ("EIS") for what it refers to as the "Entrance to Aspen" project. That initial draft EIS identified the various public parks which might be affected by the project, including the Marolt-Thomas Open

-3-

Space Park ("Marolt Park" or "the Park"). Marolt Park is a 74-acre, publicly-owned parcel on the western edge of the town of Aspen. The Park serves a variety of recreational interests for local residents including biking, cross-country skiing, and hang gliding. In addition, the Park contains a number of historic buildings. FMP is a nonprofit organization dedicated to the protection and stewardship of the area.

State Highway 82 borders Marolt Park on the north for more than half a mile. One of the central features of the planned modifications to Highway 82 is a realignment of the roadway in order to eliminate an accident-prone section of "S" curves. This realignment requires an easement across land that is currently part of the Park. All of the project alternatives, with the exception of a "no-action" alternative, involve taking some amount of land from Marolt Park.

After the draft EIS was circulated, the Agency issued a supplemental draft EIS, which identified a preferred alternative called the "phased modified direct" alternative. Under this plan, the construction would be completed in two phases. First, four vehicle lanes would be built; these would consist of two lanes of general traffic and two dedicated bus lanes. Later, a light rail track would be installed. This alternative was rejected in the final EIS:

> The phased approach to light rail evaluated in the [draft supplemental EIS] is eliminated from further consideration because of a lack of support from the community and the Aspen City Council. The phased approach adds costs and unnecessary disruption to the Section 4(f) resources when compared with the non-phased approach.

The non-phased approach referred to above called for the immediate construction of the light rail system without ever building the bus lanes. The non-phased approach was selected as the preferred alternative in the final EIS.

During the period of public comment on the final EIS, the City of Aspen, Pitkin County, and Snowmass Village jointly passed and submitted as a comment a resolution asking the USDOT to approve the phased approach as a fall-back to the non-phased approach. The elected officials representing the towns and county recognized the non-phased approach as preferable, but expressed their concern that voter approval for a light rail financing plan might not materialize. Although they committed to placing the appropriate ballot questions before the electorate, the local governments sought environmental clearance from the Agency to implement the phased approach "in the event that the Preferred Alternative is determined to be impossible to implement."

In August of 1998, the USDOT issued the Record of Decision. The ROD approves the construction of a two-lane highway with a "[light rail transit] system that, if local support and/or funding are not available, will be developed initially as exclusive bus lanes." The USDOT interprets this decision as approving both the phased and non-phased approaches. Both the phased and non-phased plans, however, require further action by the local electorate. The phased option requires approval by Aspen voters of a right-of-way transfer through Marolt Park

for four lanes instead of two. The non-phased option requires voter approval to fund construction of the light rail.[1]

FMP brought suit in district court seeking a declaratory judgment that the Agency had violated § 4(f) and NEPA, a remand to the USDOT to resolve the alleged violations, and an injunction preventing any construction during the period of the remand. After concluding that NEPA and § 4(f) had not been violated, the district court denied the request for relief.

## III. DISCUSSION

## A. Ripeness

Before we reach the merits of appellant's claims we must examine whether the issues raised in this case are ripe for review. *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 243 (10th Cir. 1991) (noting that "before a court may review an agency decision, it must evaluate" whether the claim is ripe). While we recognize

---

[1] FMP asserts there is no record support for the Agency's contention that funding is unavailable for the non-phased approach. While FMP is correct that the final EIS indicated funding was available, the record clearly indicates a vote must take place. The Agency's statements concerning funding in the final EIS relied upon a resolution stating that local officials supported the non-phased option. The draft supplemental EIS made clear, however, that voter approval of a local bond was required before the light rail could be constructed. Moreover, the final EIS, despite its statements to the contrary, recognizes that local cooperation is still required. Finally, contrary to FMP's assertion, the joint resolution clearly stating that any funding plan would require approval by the local electorate was submitted during the comment period to final EIS and is part of the record. As noted below, FMP acknowledges that the construction of the project, whether phased or non-phased, is not imminent.

that the parties have conceded our jurisdiction in this case, this court is compelled to assure itself that it has subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "As a jurisdictional prerequisite, ripeness may be examined by this court *sua sponte*." *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1444 (10th Cir. 1997).

This court determines whether an agency decision is ripe for judicial review by "examining the fitness of the issues for judicial decision and the hardship caused to the parties if review is withheld." *Park Lake Res. Ltd. Liab. Co. v. United States Dep't of Agric.*, 197 F.3d 448, 450 (10th Cir. 1999).[2] Ordinarily, whether the issues are fit for review depends on whether the plaintiffs challenge a final agency action. *Id.* Even where an agency action is considered final, however, a claim may not be ripe if there is no direct, immediate effect on plaintiffs. *See Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164-65 (1967).

1.    Section 4(f) Claim

---

[2] We have set forth a variety of factors that may be helpful in analyzing whether an issue is ripe. *See, e.g., Sierra Club v. United States Dep't of Energy*, 287 F.3d 1256, 1262-63 & n.3 (10th Cir. 2002) (applying a three factor test and noting the previous use of an equivalent four factor test). As we did in *Park Lake Resources Limited Liability Co. v. United States Department of Agriculture*, we utilize the two considerations articulated in *Abbott Laboratories* v. *Gardner*, 387 U.S. 136 (1967), fitness of the issues for decision and the hardship to the parties caused by delay, because these factors are sufficient to guide our decision. *See* 197 F.3d 448, 450 (10th Cir. 1999).

FMP's § 4(f) claim rests on the assertion that the approval of the phased approach will cause the construction of a highway design which does not minimize harm to Marolt Park as required by the Transportation Act. Both the USDOT and FMP, however, acknowledge that before the project can go forward further action by local voters is required. The ROD indicates that before the phased project can be built, Aspen voters must approve a right-of-way transfer for the construction of two highway lanes, two bus lanes, and the light rail. Likewise, the non-phased project cannot go forward without voter approval of a funding plan for the light rail. Thus, any impact on FMP from the USDOT's decision "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted).

With such vital contingencies remaining to be resolved, FMP's § 4(f) claim is not ripe for adjudication. Any conflict between FMP's goals and the ROD is purely hypothetical at this point. The voters may approve the funding scheme needed for the light rail, in which case the non-phased option, preferred by FMP, would be implemented. Indeed, local elected officials have indicated their support for the non-phased option and their intent to seek approval from the voters for that project. Likewise, the voters may not pass either of the measures required for the projects. No project could then be pursued without revision and potential further Agency involvement. The measure of remaining uncertainty

-8-

about the future of the project is reflected in FMP's briefing. FMP flatly states "[c]onstruction of Highway 82 through Marolt Park is not imminent or even foreseeable." Deciding the merits of the issues raised by FMP in this context would run counter to one of the central purposes of the ripeness doctrine as articulated by the Supreme Court: "to protect [] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (quotation omitted). There is nothing concrete about a highway that may never be built.

The lack of significant hardship to FMP resulting from a delay in review also convinces us that this issue is not ripe for decision. We acknowledge, of course, that delaying review raises costs for the parties and inconveniences those involved, but courts have not "considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be unripe." *Id.* at 735. Nothing would prevent FMP from attacking the Agency's § 4(f) decision once the voters have acted and no further obstacles to construction remain. Our conclusion that the issue is not ripe "reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of–even repetitive–postimplementation litigation." *Id.* Given FMP's ability to address the § 4(f) issue if and when construction is

certain and the significant contingencies upon which the construction depends, we conclude that FMP's claim under § 4(f) is not ripe.

2.    NEPA Claim

FMP also alleges the USDOT violated the procedural requirements of NEPA because the public was denied the opportunity to comment on the Agency's decision to approve the phased approach. As the Supreme Court has noted, "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992). Unlike a claim concerning a substantive violation, such as FMP's allegation that the Agency failed to minimize the harm resulting from the project as required by § 4(f) of the Transportation Act, a claim that an agency violated NEPA's procedural requirements becomes ripe when the alleged procedural violation occurs, assuming the plaintiff has standing to bring the claim. *Sierra Club v. United States Dep't. of Energy*, 287 F.3d 1256, 1263-64 (10th Cir. 2002). Standing requires an injury in fact that is fairly traceable to the challenged action and is likely to be redressed by judicial intervention. *Id*. at 1264-65. To show an injury-in-fact from a failure to follow NEPA's procedural requirements, FMP must show (1) the Agency created an increased risk of actual, threatened, or imminent environmental harm and (2) the increased risk of environmental harm injures FMP's interests. *Id*. at 1265. In this context, FMP need not show that the

-10-

USDOT's decision "will surely harm the environment" or that the project will go forward because of the Agency's decision. *Id.*

There is sufficient information in the record to establish that the USDOT's approval is a necessary step in the construction of the "Entrance to Aspen" project. Likewise, FMP has shown sufficient facts to support its allegation that the approval of the phased project means an increased risk of harm to Marolt Park. FMP has also shown that its members make use of the Park for recreational purposes. Thus, FMP has alleged sufficient facts to establish an injury-in-fact for purposes of standing. *Id.* at 1265. Moreover, this injury is fairly traceable to the alleged procedural violation because FMP alleges that the USDOT should have issued a supplemental final EIS before approving the phased project. Finally, the injury is redressable by judicial intervention. A court order requiring a supplemental impact statement would allow the USDOT to further consider FMP's arguments against approval of the phased alternative. Accordingly, we conclude that FMP's NEPA claim is ripe and proceed to consider the merits of that claim.

**B.    The NEPA Claim**

We review *de novo* the district court's decision regarding the alleged NEPA violation. *Davis v. Mineta*, 302 F.3d 1104, 1114 (10th Cir. 2002).

FMP argues the final EIS is inadequate to explain the Agency's rationale for approving the phased alternative because it explicitly states that the phased

alternative had been eliminated from consideration. FMP also argues the Agency is required to issue a supplemental EIS considering the impact of its decision to approve the phased option.

1.    The Adequacy of the Final EIS

In reviewing the adequacy of an EIS, we examine whether the EIS's "form, content and preparation foster both informed decision-making and informed public participation." *Colo. Envtl. Coalition v. Dombeck*, 185 F.3d 1162, 1172 (10th Cir. 1999) (quotation omitted).

FMP claims that the final EIS issued by the Agency is inadequate because it does not explain why the Agency ultimately chose to approve both the phased and non-phased options. Doing so, FMP asserts, deprived the public of the opportunity to comment on the proposal before the final decision was made. The public, however, had a full and fair opportunity to comment on the phased approach when that approach was considered in the draft supplemental EIS. The final EIS makes clear that the public did submit extensive comments. As has often been noted, NEPA does not guarantee a particular result. *Stryker's Bay Neighborhood Council, Inc., v. Karlen*, 444 U.S. 223, 227 (1987). Thus, the Agency was not required to select the preferred option indicated in the final EIS, and it did not cut off the public's right to comment by approving an option previously rejected.

Nonetheless, FMP is correct that NEPA requires the Agency to articulate "a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983). In this case, it is the ROD which provides that rational connection. The ROD states that the phased option will be implemented if local support or financing for the non-phased option is lacking. Thus, it is clear that the USDOT approved the phased option because of concerns raised by local officials about the availability of funding and support for the non-phased option. That reason provides a rational explanation for the Agency's decision to approve the phased option. While the final EIS itself does not contain that rationale, we cannot conclude that it is therefore inadequate. Forcing the Agency to continually re-draft the final EIS simply to duplicate an explanation that is provided in the ROD "would render agency decision-making intractable, always awaiting updated information . . . ." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 374 (1989). The final EIS explains the alternatives studied by the USDOT and addresses the environmental impacts of the project at length. Because the ROD supplies a rational connection between the facts and the Agency's decision and because the various environmental impact statements drafted by the Agency, including the final EIS, indicate that the Agency took the required "hard look" at the environmental impact of its decision, we conclude that the final EIS is adequate.

2.    Supplemental EIS

An agency is required to prepare a supplemental environmental impact statement "if there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Colo. Envtl. Coalition*, 185 F.3d at 1177 (quotation omitted).  A supplement is only required "if the new information is sufficient to show [the proposed action] will affect the quality of the human environment in a significant manner or to a significant extent not already considered." *Marsh*, 490 U.S. at 374 (quotation omitted).  This court reviews the Agency's decision regarding the need for a supplemental EIS under the arbitrary and capricious standard.  *Colo. Envtl. Coalition*, 185 F.3d at 1178.[3]

---

[3] In *Colorado Environmental Coalition v. Dombeck* the United States Forest Service was confronted with additional information concerning potential environmental impacts of its decision.  185 F.3d 1162, 1177 (10th Cir. 1999).  We noted that in those circumstances an agency must provide an explanation as to why the new information did not require further environmental analysis.  *Id.* at 1177-78.  In this case, the information which affected the USDOT decision does not concern potential environmental impacts at all.  Rather, the joint resolution simply raises concerns about local funding and support for the non-phased project design.  It would make little sense to require an explanation of why the non-environmental information received by the Agency did not require a new environmental analysis.  Thus, the Agency is not required to explain its decision to forego a supplemental EIS in response to the joint resolution, but instead should explain how the information altered its decision and why that alteration does not require a supplemental EIS.  As explained above, we find that the information provided by the Agency in this case is sufficient.

FMP argues that the joint resolution submitted by the local governments and the Agency's decision to select a previously rejected alternative necessarily constitute a "substantial change[] in the proposed action that [is] relevant to environmental concerns." 40 C.F.R. § 1502.9(c)(1)(i). Even assuming the implementation of the phased project will have a significant environmental impact, the failure to issue a supplemental EIS is not arbitrary or capricious because the relevant environmental impacts have already been considered. As stated in the ROD, the two options approved by the Agency had been fully examined in the supplemental draft EIS and the final EIS. The draft supplemental EIS considered the phased option in detail because at that stage the phased option was the preferred option. The Agency has determined a supplemental EIS is not required where the ROD selects an option not identified as the preferred option in the final EIS, as long as the selected option was fully evaluated. 23 C.F.R. §§ 771.130(a)(1),(b)(2); *See Marsh*, 490 U.S. at 374 (noting that a supplemental EIS is only required where the impacts of new decision have not already been considered). Given that the environmental impacts of the phased option have already been fully considered, we conclude that the Agency's failure to issue a supplemental EIS in this case was not arbitrary or capricious.

## IV. Conclusion

For reasons stated above, we **remand** to the district court with instructions to **vacate** that portion of its judgment pertaining to the § 4(f) claim, and **affirm** the district court's order regarding the NEPA claim.