**AMERICAN INDEPENDENCE MINES AND MINERALS CO., an Idaho joint venture composed of Ivy Minerals, Inc., an Idaho corporation, and Walker Mining Company, an Idaho corporation; and Ivy Minerals, Inc., an Idaho corporation, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, an Agency of the United States; Tom Vilsack, in his capacity as Secretary of Agriculture of the United States; United States Forest Service, an agency within the Unites States Forest Department of Agriculture; Tom Tidwell, in his capacity as Chief of the United States Forest Service; Harvey Forsgren, in his capacity as Regional Forester for the Intermountain Region of the United States Forest Service; Brent**

L. Larson, in his capacity as Forest Supervisor of the Caribou–Targhee National Forest; and Suzanne C. Rainville, in her capacity as Forest Supervisor for the Payette National Forest, Defendants.

Case No. CV–09–433–S–EJL.

United States District Court, D. Idaho.

June 10, 2010.

Opinion to Reconsider and Amend Granted in Part Dec. 16, 2010.

1247

David R. Lombardi, Christopher H. Meyer, Kelsey Jae Nunez, Martin C. Hendrickson, Givens Pursley, Boise, ID, for Plaintiff.

Thomas K. Snodgrass, United States Department of Justice, Stout St., CO, Peter Whitfield, USDOJ, Washington, DC, for Defendant.

## AMENDED MEMORANDUM DECISION AND ORDER

EDWARD J. LODGE, District Judge.

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 18), or, in the alternative, Defendants' Motion to Dismiss for Failure to State a Claim (Docket No.

19). Also before the Court is Valley County's Motion to Intervene (Docket No. 13). The Court grants Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, denies as moot Defendants' Motion to Dismiss for Failure to State a Claim, and grants Valley County's Motion to Intervene. Specifically, the Court finds that Plaintiffs' alleged injury is not within the zone of interests protected by the National Environmental Policy Act ("NEPA") nor the National Forest Management Act ("NFMA"). The Court finds that Valley County has asserted an injury in fact and that Valley County's alleged injury falls within the zone of interests protected by NEPA and the NFMA. The Court also finds that Valley County's proposed claims are not moot or unripe, and that Valley County has exhausted its proposed claims. The Court will therefore allow Valley County to intervene and its action to proceed separately.

## BACKGROUND

Plaintiffs American Independence Mines and Minerals Co., Ivy Minerals, Inc., and Walker Mining Co., filed a complaint in this court in September 2009. Plaintiff American Independence is an Idaho joint venture. Plaintiffs Ivy Minerals and Walker Mining are two Idaho corporations; they are the companies that make up the American Independence joint venture. Defendants are the United States Department of Agriculture; Tom Vilsack, in his official capacity as the Secretary of the Department of Agriculture; the United States Forest Service ("USFS"); and Tom Tidwell, Harvey Forsgren, Brent L. Larson, and Suzanne Rainville in their various official capacities with the USFS.

Plaintiffs challenge the environmental impact statement and record of decision underlying an agency rule, created on November 9, 2005, called the Travel Management Rule. The Travel Management Rule requires each national forest system to designate "those roads, trails, and areas that are open to motor vehicle use" and "prohibit[s] the use of motor vehicles off the designated system, as well as use of motor vehicle on routes and in areas that is not consistent with the designations." See 70 Fed. Reg. 68,264; see also 70 Fed. Reg. 68,624–68,291 (Nov. 9, 2005). Plaintiffs also challenge the record of decision from October 3, 2008 that is associated with the Travel Management Rule as applied to the McCall and Krassel Ranger Districts in the Payette National Forest. Lastly, Plaintiffs challenge Brent Larson's January 8, 2009 decision denying Plaintiffs' appeal of the record of the decision.

Plaintiffs assert that they are "actively engaged in mining, exploration and environmental assessment" in the Big Creek area of the Krassel Ranger District. Compl. ¶ 24 (Docket No. 1). This area is referred to as "MA–13" in the Record of Decision. Plaintiffs brought eight causes of action against Defendants but withdrew without prejudice claims five, seven, and eight pursuant to the parties' stipulation. See Stipulation (Docket No. 25); Order (Docket No. 29).

Plaintiffs' five remaining claims are as follows. Plaintiffs claim that Defendants failed to follow the procedural requirements of NEPA (1) by failing to adequately describe the "no action" alternative during the rulemaking process, by which Plaintiffs mean that Defendants failed to describe ownership of existing roads in the affected area (Claim 1); (2) by failing to adequately consider the mining and associated economic impacts of the proposed rule (Claims 2 and 3); (3) by failing to notify Plaintiffs of the proposed action (Claim 4); and (4) by failing to ascertain and describe roads protected as rights of way under Revised Statute § 2477, codified at 43 U.S.C. § 932 (Claim 6). Plain-

tiffs also allege in claims two and four that Defendants violated the NFMA.

Plaintiffs assert federal subject matter jurisdiction, arising under NEPA, 42 U.S.C. §§ 4321–4370h, and the NFMA, 16 U.S.C. §§ 1600–1614. *Compl.* ¶ 14. Plaintiffs allege that Defendants violated various NEPA and NFMA provisions and implementing regulations. *See id.* ¶¶ 78–81, 108–10, 119, 121, 130, 144, and 146. For claims one through four and six, Plaintiffs also allege that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (2)(D). *Id.* ¶¶ 104–05, 126–27, 140–41, 158–59.

Defendants move to dismiss for lack of subject matter jurisdiction and argue that Plaintiffs lack standing to file a NEPA action because Plaintiffs' alleged harm is purely economic and therefore not within the environmental zone of interests protected by NEPA.[1] *See* Docket No. 18. In the alternative, Defendants move to dismiss for failure to state a claim. *See* Docket No. 19.

In addition to Defendants' motions, the Court will also consider Valley County's motion to intervene in Plaintiffs' case. *See Motion to Intervene* (Docket No. 13). Like Plaintiffs, Valley County asserts federal subject matter jurisdiction based on NEPA and the NFMA and alleges a procedural injury related to recreational, aesthetic, and other interests on behalf of its citizens. Valley County also claims an ownership interest in some of the roads affected by the Travel Management Rule and argues that this ownership interest confers standing.

Valley County initially proposed to bring seven claims against Defendants but will voluntarily withdraw claims four, six, and seven if this Court allows Valley County to intervene. *See Valley County's Reply,* at 6 (Docket No. 27). Although the stipulation between Plaintiffs and Defendants did not affect Valley County's proposed intervention, Valley County's withdrawn claims parallel those withdrawn by the parties' stipulation. Of Valley County's remaining causes of action, claims one through three are the same claims that Plaintiffs asserted as claims one through three. *See Complaint in Intervention,* ¶¶ 17–19 (Docket No. 13–1). Claims one through three allege that Defendants failed to adequately describe the no action alternative and failed to consider mining and economic impacts associated with the Travel Management Rule. *See id.* Claim five in Valley County's proposed Complaint, which is identical to Plaintiffs' original claim six, alleges that the Record of Decision underlying the Travel Management Rule failed to adequately describe possible R.S. 2477 roads and the costs and benefits to quieting title to R.S. 2477 roads. *Id.* ¶ 21.[2]

## DISCUSSION

I. *Standard for a Motion to Dismiss for Lack of Subject Matter Jurisdiction*

 Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may ask the court to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Moreover, subject matter jurisdiction is a "threshold matter," which a court must determine before proceeding to the merits

---

1. The Court will not consider Defendants organizational standing arguments because Plaintiffs do not attempt to assert organizational standing. *See Plaintiffs' Combined Response,* at 18–19 (Docket No. 26).

2. The Court recognizes that claims one and five are similar because both allege that De-

fendants failed to adequately describe the current system of roads impacted by the Travel Management Rule. Claim one is, however, about the description of the "no action" alternative, while claim five is about Defendants' description in the record of decision generally.

of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A court may determine subject matter jurisdiction from the facts alleged in the complaint or, if necessary, from the actual facts in the case. *Thornhill Pub. Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979) (citations omitted).

## II. *Standing Requirements*

■ NEPA does not provide for private rights of action, but a plaintiff may challenge an agency action under the Administrative Procedure Act ("APA"). The APA provides statutory standing to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. To bring an action under the APA, a plaintiff must demonstrate both constitutional and prudential standing. *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (citation omitted).

■ In order to have prudential standing under the APA, " 'the interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute ... in question.' " *Id.* (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The purpose of the zone of interests test is "to exclude those plaintiffs whose suits are more likely to frustrate than to further statutory objectives." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 397 n. 12, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). A plaintiff's asserted interest does not meet the zone of interests test " 'if the plaintiff's interests are ... marginally related to or inconsistent with the purposes implicit in the statute.' " *Id.* at 399, 107 S.Ct. 750. However, " 'no indication of congressional purpose to ben-

efit the would-be plaintiff' " need exist. *Id.* at 399–400, 107 S.Ct. 750.

■ The party asserting "federal jurisdiction bears the burden of establishing [the standing] elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Moreover, the plaintiff must support each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

## III. *Plaintiffs' Claims Do Not Fall Within NEPA's Zone of Interests*

■ Defendants argue that Plaintiffs' asserted claims do not fall with NEPA or the NFMA's zone of interests because Plaintiffs assert purely economic interests. The Court agrees.

NEPA does not impose substantive requirements but instead mandates a process that the agency must follow. NEPA was enacted in order "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321, NEPA § 101. NEPA requires a federal agency to prepare a "detailed statement" on the environmental impact of a proposed rule if that rule is a "major Federal action[ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C), NEPA § 102.

■■ In a NEPA action, the zone of interests protected is environmental. *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 950 (9th Cir. 2006). A plaintiff asserting "purely economic injuries does not have standing to challenge an agency action under NEPA." *Nev. Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 716 (9th Cir.1993) (citations omitted); *id.* ("The purpose of NEPA is to protect the environment, not

the economic interests of those adversely affected by agency decisions.") (citation omitted). A plaintiff may, however, "have standing to sue under NEPA even if his or her interest is primarily economic, as long as he or she also alleges an environmental interest or economic injuries that are causally related to an act within NEPA's embrace." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. United States Dep't Agric.*, 415 F.3d 1078, 1103 (9th Cir.2005) (citation and internal quotation marks omitted). A plaintiff's interest in "recreational use and aesthetic enjoyment" are also among the interests NEPA was designed to protect. *Lujan*, 497 U.S. at 886, 110 S.Ct. 3177.

██ In the context of an Endangered Species Act case, the Supreme Court held that the zone of interests test is "determined not by reference to the overall purpose of the Act in question … but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175–76, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Plaintiffs correctly point out that post-*Bennett*, a court is required to interpret NEPA's zone of interests by reference to particular provisions in the statute. Plaintiffs appear to argue that interpreting specific NEPA provisions, rather than NEPA as a whole, may expand or change the zone of interests protected by NEPA to include solely economic injuries caused by an environmental regulation. The Ninth Circuit, however, rejected this argument in *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934 (9th Cir.2005). In *Ashley Creek*, the Ninth Circuit explicitly held that § 102,

which requires the preparation of environmental impact statements, did not protect "purely economic interests" and that § 102 could not be "severed from NEPA's overarching purpose" of protecting the environment. 420 F.3d at 942.[3]

Here, Plaintiffs assert federal subject matter jurisdiction arising from NEPA, specifically 42 U.S.C. § 4332, NEPA § 102, which requires each federal agency to prepare an environmental impact statement. In order to meet the zone of interests requirement, Plaintiffs must show that their interest is environmental or that they have suffered an economic injury that is related to an environmental injury. *See Ranchers Cattlemen*, 415 F.3d at 1103.

Plaintiffs have not linked their pecuniary interest in mineral resource development to the physical environment or to an environmental interest contemplated by NEPA. *See id.* Rather, Plaintiffs' injury is the inability to freely travel a road or roads that Plaintiffs wish to travel to access mineral resource development sites. *See Plaintiffs' Combined Response*, at 10 (Docket No. 26). Contrary to NEPA's environmental purpose, Plaintiffs' access on these roads would degrade the environment, not protect the environment.

Plaintiffs assert that their mining and resource development interests are completed "in a fashion that minimizes and/or mitigates and remediates environmental impact and stimulates human welfare through economic development." *Compl.* ¶ 22. This only demonstrates the manner in which Plaintiffs operate their business and not whether Plaintiffs' interests also

---

3. Plaintiffs argue that the federal regulations implemented pursuant to NEPA and the NFMA are helpful in understanding the zone of interests protected by the authorizing statute. *See Plaintiffs' Combined Response*, at 13 n. 12 (Docket No. 26). The Court assumes that Plaintiffs are not arguing that the implementing regulations protect a broader zone of interests than the statute which authorized those regulations. To be clear, however, the Court will only examine whether Plaintiffs' claims fall with the zone of interests protected by NEPA and the NFMA and not whether separate regulations provide Plaintiffs with a different or broader interest sufficient to confer standing.

align with the environmental interests protected by NEPA. Plaintiffs state that they are engaged in "environmental and geophysical studies" and "environmental assessment activities." *Id.* ¶¶ 23–24. Plaintiffs also admit, however, that the studies are completed in pursuit of mineral resource development activities. That is, Plaintiffs would never have engaged in environmental assessment unless it also furthered their economic interest. Plaintiffs' current inability to complete environmental assessments only impedes Plaintiffs' mineral resource development and therefore does not fall within the environmental zone of interests protected by NEPA.

Plaintiffs also assert that the owners of the joint venture "appreciate the environmental, historical and cultural values of lands and historic sites" affected by the decision and "derive intrinsic enjoyment from their use of the roads." *Id.* ¶¶ 26–27. The Court agrees that the owners might have these interests. The owners, however, are not suing in their individual capacities nor are Plaintiffs asserting organizational standing on behalf of these interests. It is hard to see how mining and resource development corporations can "appreciate environmental values" or "derive intrinsic enjoyment from their use of the roads." More importantly, the promotion of either of these asserted interests is not part of the Plaintiffs' admitted interest in mineral resource development.

The Court therefore finds that the injury asserted as the basis of claims one through four and claim six does not fall within the environmental zone of interests protected by NEPA.

IV. *Plaintiffs' Claims Do Not Fall Within NFMA's Zone of Interests*

■ The NFMA provides for the management of national forests and requires the USFS to balance the demands on national forests by creating forest management plans. 16 U.S.C. § 1604(a). Although case law on the NFMA is sparse, the zone of interests protected by the NFMA is identifiable from the statute, which lays out "the goals" of creating a forest management plan. *Id.* § 1604(g)(3). The statute specifies the consideration and protection of the following interests: recreational use, environmental preservation, and ensuring the continued diversity of plant and animal communities. *Id.* § 1604(g)(3)(A)-(B). The other interests specified in the statute are unimportant here.

In this case, the only relevant interest Plaintiffs could assert is environmental preservation. For the reasons discussed above, Plaintiffs' asserted injury is not related to environmental preservation. *See id.* The Court therefore finds that claims two and four fall outside the zone of interests protected by the NFMA.

V. *Valley County's Motion to Intervene*

A. *Intervention as of Right*

■ Federal Rule of Civil Procedure 24 allows an applicant to intervene either as of right or permissively. Fed. R. Civ. P. 24. An applicant may intervene as of right if the applicant meets four requirements: (1) "the applicant must timely move to intervene"; (2) "the applicant must have a significantly protectable interest related to the property ... that is the subject of the action"; (3) the applicant must prove that "the disposition of the action may impair or impede" the applicant's ability to protect that interest; and (4) "the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir.2003) (citation omitted); *see* Fed. R. Civ. P. 24(a)(2).

■ Here, Valley County's motion to intervene was filed prior to the motions to dismiss, the first dispositive motions in the case, and was therefore timely. However, as discussed above, the Court has dismissed the originally filed complaint for lack of standing. As a result, whatever interests Valley County has cannot be impaired or impeded by Plaintiffs' action because the Court will not decide the merits of Plaintiffs' case. *See* Fed. R. Civ. P. 24(a)(2). Valley County does not, therefore, meet the third requirement for intervention as of right. *See Arakaki,* 324 F.3d at 1083. Accordingly, the Court denies Valley County's request to intervene as of right.

## B. *Permissive Intervention*

■ A court may also permit a party to intervene if an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B). An applicant must meet three requirements:

(1) jurisdiction independent of the original parties; (2) a timely filed motion; and (3) a claim or defense that shares a common question of law or fact with the main action. *See Northwest Forest Res. Council v. Glickman,* 82 F.3d 825, 839 (9th Cir. 1996) (citation omitted). Valley County meets requirements two and three for permissive intervention because Valley County filed a timely motion to intervene and asserts claims similar to those Plaintiffs asserted. *See id.* (citation omitted).

Defendants argue that the Court lacks jurisdiction over Valley County's claims. Specifically, they contend that Valley

County lacks standing to proceed with this case because it has not suffered an injury in fact and that its injury does not fall within the zone of interests protected by NEPA and the NFMA.[4] Like Plaintiffs, Valley County asserts federal subject matter jurisdiction based on NEPA and the NFMA.[5]

### 1. *Valley County Has Alleged an Injury in Fact*

■ Pursuant to Article III's case and controversy limitation of federal court jurisdiction, a plaintiff must demonstrate constitutional standing to bring a claim in federal court. U.S. Const., art. III, § 1; *see Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (citations omitted). A plaintiff meets constitutional standing requirements if the Plaintiff shows an injury in fact, causation, and redressability. *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. To assert a procedural injury in fact, a plaintiff must allege that "(1) the [agency] violated certain procedural rules; (2) these rules protect [the plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Citizens for Better Forestry v. United States Dep't of Agric.,* 341 F.3d 961, 969–70 (9th Cir.2003). A plaintiff meets the concrete interest requirement if "a 'geographic nexus' [exists] between the individual asserting the claim and the location suffering an environmental impact." *Cantrell v. City of Long Beach,* 241 F.3d 674, 679 (9th Cir.2001) (citation omitted).

Valley County has demonstrated a geographic nexus because the affected roads are within Valley County. *See id.* The

---

4. Defendants do not challenge Valley County's right to sue on behalf of its citizens.

5. Alternatively, Defendants argue that Valley County's assertion of ownership of some of the affected roads cannot be determined by this court in a NEPA or NFMA action and is more properly decided pursuant to the Quiet

Title Act ("QTA"). As discussed below, because Valley County has standing based on its citizens' recreational and aesthetic interests, the Court need not decide whether Valley County's alleged ownership of roads affected by the Travel Management Rule would separately create standing.

Court therefore finds that Valley County has alleged a procedural injury in fact.

### 2. Valley County's Injury Is Within NEPA's Zone of Interests

 A plaintiff must also meet the requirements for prudential standing, namely, that the plaintiff's interests fall within the governing statute's zone of interests. *Nat'l Credit Union Admin.*, 522 U.S. at 488, 118 S.Ct. 927. In order to meet the zone of interests requirement with regard to NEPA, Valley County must show that its interest is environmental or that their economic injury is related to a NEPA-protected injury. *See Ranchers Cattlemen*, 415 F.3d at 1103. Additionally, Valley County's NEPA action may proceed if Valley County asserts an interest in "recreational use and aesthetic enjoyment" in the affected area. *See Lujan*, 497 U.S. at 886, 110 S.Ct. 3177.

 Valley County alleges various interests on behalf of its citizens, one of which is to protect the rights of those citizens who "derive intrinsic enjoyment from their use of these roads." *Compl. in Intervention*, ¶ 8 (Docket No. 13–1). This asserted interest falls within the "aesthetic enjoyment" zone of interest protected by NEPA and is therefore sufficient to confer standing upon Valley County to proceed in this action. *See Lujan*, 497 U.S. at 886, 110 S.Ct. 3177. Valley County's citizens may also "derive intrinsic enjoyment from the use of these roads" in pursuit of recreational uses, which also falls within the zone of interests protected by NEPA. *See id.*

Defendants argue that *Lujan v. Defenders of Wildlife* ("*Defenders*"), 504 U.S. 555, 565–66, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), requires Valley County to identify specific roads affected by the Travel Management Rule that fall within the zone of interests. It is true that *Defenders* rejected various standing arguments premised on hypothetical future injuries or on envi-

ronmental injuries loosely related to the regulated area. *See Defenders*, 504 U.S. at 565–66, 112 S.Ct. 2130 ("[A] plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity of it.' " (citing *Lujan*, 497 U.S. at 887–89, 110 S.Ct. 3177)). The Court is not persuaded by Defendants' argument. Valley County may not have identified affected roads by name, but Valley County clearly limits its claims to those roads affected by the Travel Management Rule. In contrast to the Plaintiffs in *Defenders*, Valley County does not seek to redress an injury that falls somewhere outside the regulated area. *See Defenders*, 504 U.S. at 565–66, 112 S.Ct. 2130.

The Court therefore finds that Valley County's alleged injury falls within the zone of interests protected by NEPA.

### 3. Valley County's Injury Is Within the NFMA's Zone of Interests

 To meet the zone of interests requirement with respect to the NFMA, Valley County must show that its interest is in protecting recreational use, environmental preservation, or ensuring the continued diversity of plant and animal communities. 16 U.S.C. § 1604(g)(3)(B). For the reasons discussed above, the Court finds that Valley County's asserted interest is related to recreational use and therefore falls within the zone of interests protected by the NFMA.

### 4. Conclusion

For the reasons discussed above, the Court finds that Valley County has standing to proceed with this action.

### VI. Other Jurisdictional Issues Regarding Intervenor Valley County

 If an intervenor cannot demonstrate that this Court has jurisdiction, the Court may deny intervention. *See EEOC v. Nevada Resort Ass'n*, 792 F.2d 882, 886

(9th Cir.1986). Defendants challenge Valley County's intervention on other non-standing jurisdictional grounds. The Court will consider Defendants' other jurisdictional arguments as separate bars to intervention.

### A. *Mootness* (Claim 1)

Defendants argue that claim one is moot. Valley County alleges a procedural violation of NEPA and argues that the agency's Record of Decision underlying the Travel Management Rule is invalid because it fails to adequately describe the no action alternative. Specifically, Valley County argues that the agency did not describe ownership of existing roads and therefore did not fully understand the implications of changing access to the roads affected by the Travel Management Rule.

■ A court lacks jurisdiction to hear moot claims. *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir.2008) (citation omitted). "The burden of demonstrating mootness is a heavy one." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Id.* "As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present." *Id.* at 1245.

■ In this case, if Valley County prevails on claim one, the Court could offer effective relief by ordering the agency to restart the rulemaking process and adequately describe the no action alternative. *See Gordon*, 849 F.2d at 1244–45. The Court therefore finds that claim one is not moot and may proceed. *See id.*

### B. *Ripeness* (Claims 2 and 3)

In claims two and three, Plaintiffs allege that Defendants did not adequately consid-

er mining and the economic impact of the proposed rule. Defendants argue that these claims are not ripe.

■ A plaintiff, or, in this case, the intervenor, bears the burden of establishing that an issue is ripe for judicial review. A ripeness inquiry requires this Court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 104–05, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Ordinarily, a challenge to an agency regulation is not ripe until "some concrete action applying the regulation to the claimant's situation ... harms or threatens to harm him." *Lujan*, 497 U.S. at 891, 110 S.Ct. 3177.

■ In many cases, ripeness "coincides squarely with standing's injury in fact prong" and "can be characterized as standing on a timeline." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.2000). To meet the injury in fact requirement, a plaintiff asserting a purely procedural interest must demonstrate "a 'geographic nexus' between the individual asserting the claim and the location suffering an environmental impact." *Cantrell*, 241 F.3d at 679.

■ To the extent that Valley County alleges a purely procedural interest with respect to claims two and three, Valley County meets the geographic nexus test because the roads affected by the Travel Management Rule are at least partially within Valley County. *See id.* To the extent that Valley County alleges other non-procedural harms in claims two and three, Valley County has not demonstrated ripeness.[6] The Court finds that claims two

6. Defendants' reliance on *Park Lake Resources, LLC v. U.S. Department of Agriculture,*

and three are ripe and that the Court therefore has jurisdiction to hear these claims.

## C. *Outside Scope of Sovereign Immunity Waiver* (Claim 5)

 In claim five, Plaintiffs allege that the Record of Decision supporting the Travel Management Rule failed to adequately describe possible R.S. 2477 roads and the costs and benefits to determining the existence and ownership of R.S. 2477 roads. *Complaint in Intervention*, ¶ 21 (Docket No. 13–1). Defendants argue that this Court must determine ownership of the affected roads to decide claim five, and that this Court must do so pursuant to the Quiet Title Act ("QTA").[7]

Revised Statute § 2477 ("R.S.2477") once provided that "the right of way for construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932 (1970), *repealed by* Federal Land Policy Management Act of 1976, Pub. L. No. 94–579, § 706(a), 90 Stat. 2743 (1976). Congress repealed the act in 1976 but preserved any rights of way that existed prior to the date of repeal. *See* 43 U.S.C. § 1769(a). Roads protected as rights of way pursuant to R.S. 2477 are commonly called R.S. 2477 roads.

The Court is not persuaded that determining ownership of the affected roads is necessary to adjudicating Valley County's claims. Valley County disclaims any intention of having this Court conclusively adjudicate ownership of these roads. The Court has no reason to doubt this assertion. Further, as discussed above, to the extent that Valley County is alleging procedural violations of NEPA on behalf of its citizens, this Court has jurisdiction to hear those claims. The Court therefore finds that it has jurisdiction to hear claim five.

## D. *Failure to Exhaust Administrative Remedies* (Claims 1–3, Claim 5)

 Defendants argue that Valley County has not exhausted claims one through three and claim five. Pursuant to the APA, a court may review agency action that is "final." 5 U.S.C. § 704. In addition, a party seeking review of a final agency action must also exhaust administrative remedies if expressly required by the statute or an agency rule. *See Clouser v. Espy*, 42 F.3d 1522, 1532 (9th Cir.1994) (citation omitted). A party meets the exhaustion requirement if the " 'claims raised at the administrative appeal and in the federal complaint [are] so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the same claims now raised in federal court.' " *Native Ecosys. Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir.2002) (quoting *Kleissler v. United States Forest Serv.*, 183 F.3d 196, 202 (3d Cir.1999)). A party does not need to use "precise legal formulations" in the administrative process; the claims a party raises to the agency need only alert "the decision maker to the problem in general terms."

197 F.3d 448 (10th Cir.1999), is misplaced because the plaintiff in that case brought a substantive challenge to the regulation. *See Park Lake*, 197 F.3d at 449 (challenging a U.S. Forest Service designation as arbitrary, capricious, and contrary to the plan language of the APA).

7. The QTA provides: "The United States may be named as a party defendant in a civil action ... to adjudicate a disputed title to property in which the United States claims an interest." 28 U.S.C. § 2409a(a). Valley County, however, seeks to intervene pursuant to the APA. The APA expressly waives sovereign immunity in suits against federal officers if the plaintiff seeks only nonmonetary relief. *See* 5 U.S.C. § 702. Section 702's waiver is inapplicable, however, if "any other statute ... grants consent to suit." *Id.* The QTA is such a statute.

*See Idaho Sporting Cong., Inc. v. Ritten-house,* 305 F.3d 957, 965 (9th Cir.2002) (citation omitted).

 Valley County submitted two documents during rulemaking: a comment letter on July 26, 2004 and an appeal of the Travel Management Rule on November 22, 2008. *See Opposition to Motion to Intervene,* Exhs. F–G (Docket Nos. 20–1–20–2). The Court will only consider whether the *appeal* letter sufficiently raises the claims Valley County would like to assert here. Although the Ninth Circuit has not explicitly decided whether a party's comment letter is part of an administrative appeal, Ninth Circuit cases assume that exhaustion requirements begin with a party's administrative appeal. *See, e.g., Native Ecosys.,* 304 F.3d at 898–900 (describing exhaustion during the administrative appeals process and addressing only the party's administrative appeal); *Idaho Sporting Cong.,* 305 F.3d at 965–66 (same).

Defendants argue that Valley County did not mention NEPA, the EIS, or R.S. 2477 rights of way and that Valley County's claims are therefore not exhausted.[8] *See Opposition to Motion to Intervene,* at 7–8 (Docket No. 20). Valley County's appeal included the following: (1) "The primary focus of this appeal is the closing of roads that are used by landowners, recreationist[s], hunters, anglers, hikers, bikers, ATV enthusiasts, sightseers, firewood gathering, mining, and firefighters," *see id.,* Exh. F, at 2 (Docket No. 20–1); (2) Valley County provided historic and R.S. 2477 road information, which the travel plan ignored, *id.;* (3) the Travel Management Rule risks closing various roads without determining which are R.S. 2477 roads, *id.* at 4; (4) the Travel Management Rule "needs more work" because the rule

affects roads that Defendants may or may not have the right to impact, *id.* at 5; (5) lost opportunities impact the local economy, which the travel management rule "must take into consideration," *id.,* and (6) "much more information is needed before this decision is final," *id.*

In its appeal letter, Valley County clearly identified the issue of the possible adverse impact that the Travel Management Rule could have on mining and the local economy, thereby putting the agency on notice of claims two and three in Valley County's proposed complaint. *See Native Ecosys.,* 304 F.3d at 899. Valley County also sufficiently challenged Defendants' alleged failure to describe the existing status of possible R.S. 2477 roads and therefore put the agency on notice of claims one and five in Valley County's proposed complaint. *See id.* The Court therefore finds that Valley County sufficiently raised claims one through three in its administrative appeal and has exhausted these claims. *See id.*

### VII. *The Court Will Allow Valley County to Intervene*

 Lastly, even if an applicant has proven independent jurisdiction and therefore meets the requirements for permissive intervention, a court has discretion to deny permissive intervention. *Donnelly v. Glickman,* 159 F.3d 405, 412 (9th Cir.1998) (citations omitted). A court must consider whether "intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.* (citations omitted). As Valley County's motion to intervene was timely filed and, as a result of this Court's dismissal of Plaintiffs' complaint, will not unfairly prejudice any par-

---

8. The Court recognizes that Defendants made this argument with respect to Valley County's comment letter. Given that this Court will not review Valley County's comment letter,

the Court will nevertheless review Valley County's *appeal* letter for the same exhaustion issues.

ty, the Court will exercise its discretion and allow Valley County to intervene in this case. *See id.* Lastly, the Court finds that Valley County's action should proceed as a separate action because this Court has already dismissed the original Plaintiffs' Complaint and because Valley County has proven independent jurisdiction. *See* 7C Wright, Miller, & Kane, *Federal Practice and Procedure* § 1917 (3d ed. 1998) (approvingly cited by the Ninth Circuit in *Blake v. Pallan,* 554 F.2d 947, 956 (9th Cir.1977) without explicitly deciding the issue).

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 18) is GRANTED;

Defendants' Motion to Dismiss for Failure to State a Claim (Docket No. 19) is DENIED as moot; and

Valley County's Motion to Intervene (Docket No. 13) is GRANTED.

## MEMORANDUM DECISION AND ORDER

### INTRODUCTION

Pending before the Court in the above-entitled matter is Plaintiff's Motion to Alter or Amend Order and Judgment. The parties have filed their briefing and matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, American Independence Mines and Minerals Company, is an Idaho joint venture composed of Plaintiffs Ivy Minerals, Inc. and Walker Mining Company (collectively the "Plaintiffs"). (Dkt. No. 1.) Plaintiffs state they have been involved in efforts to develop the mineral resources of the Payette National Forest (PNF) in a fashion that minimizes and/or mitigates and remediates environmental impact and stimulates human welfare through economic development. (Dkt. No. 1.) To this end, Plaintiffs claim they have undertaken studies, own property, and are actively engaged in mining, exploration, and environmental assessment activities in the Big Creek area of the Krassel Ranger District in the PNF, known as "MA–13." (Dkt. No. 1.) Such activities, Plaintiffs allege, require the use of "long-established roads, some of which are R.S. 2477 roads, to access existing mining claims and for exploration for mineral deposits which are locatable under the General Mining Act of 1872...." (Dkt. No. 1.)

On November 9, 2005, the United States Department of Agriculture (USDA) and the Forest Service (FS) enacted the Travel Management Rule requiring National Forests to designate a system of roads, trails, and areas that are open to motor vehicle use and prohibits the unauthorized use of motor vehicles off the designated system. *See* 70 Fed.Reg. 68,264; *see also* 70 Fed. Reg. 68,264–68,291 (Nov. 9, 2005). On October 3, 2008, following an extended public comment period, the USDA and FS issued its Record of Decision (ROD) applying the Travel Management Rule to the McCall and Kassel Ranger Districts in the PNF. Plaintiffs oppose the ROD's application of the Travel Management Rule arguing it has adversely affected them, and the public, by closing roads within the PNF that

were previously open to the public, including R.S. 2477 roads. (Dkt. No. 1.) The implementation of the Travel Management Rule in the PNF, Plaintiffs further allege, fails to achieve the purposes and requirements of the National Environmental Protection Act (NEPA) and R.S. 2477 because there was no requirement that the existing roads in the National Forest be inventoried or reviewed to determine their use by the public and/or property owners before the roads were designated. (Dkt. No. 1, ¶¶ 30, 31.) Plaintiffs argue the ROD will "have the effect of closing and criminalizing the Public Use of multiple roads in the MA–13 area ... which were used by [Plaintiffs] and others prior to the issuance of the ROD." (Dkt. No. 1, ¶ 73.)

Following the denial of their appeal, Plaintiffs initiated this action in September of 2009 challenging: 1) November 9, 2005 Travel Management Plan; 2) October 3, 2008 ROD; and 3) January 8, 2009 decision denying Plaintiffs' appeal. (Dkt. No. 1.) Plaintiffs' claims allege violations of NEPA and the National Forest Management Act (NFMA). (Dkt. No. 1.) Defendants filed a Motion to Dismiss arguing the Plaintiffs lacked standing to file a NEPA action because their alleged harm is purely economic and, therefore, not within the environmental zone of interests protected by NEPA. (Dkt. No. 18.) Alternatively, Defendants also moved to dismiss for failure to state a claim. (Dkt. No. 19.)

On May 12, 2010 the Court entered an Order and Judgement granting the Defendants' Motion to Dismiss for lack of subject matter jurisdiction and dismissing the case in its entirety. (Dkt. No. 31, 32.)[1] The Court concluded the Plaintiffs' alleged injury is not within the zone of interests protected by NEPA or NFMA because the alleged harm is purely economic. (Dkt.

No. 31, 35.) As a result, Plaintiffs filed the instant Motion asking the Court to amend its Order and Judgment and deny the Defendants' Motion to Dismiss or, alternatively, amend the dismissal and grant them leave to file an amended complaint. The motion is made pursuant to Federal Rules of Civil Procedure 59(e). The Defendants oppose the Motion. (Dkt. No. 37.)

## STANDARD OF LAW

■ Motions to alter or amend are governed by Federal Rule of Civil Procedure 59(e). *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 (9th Cir.1984). The scope and purpose of such motions have been analyzed as follows:

> Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover they cannot be used to argue a case under a new legal theory.

*Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) (citations omitted).

> Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.
>
> . . .
>
> [A] rehash of the arguments previously presented affords no basis for a revision of the Court's order.

*Illinois Central Gulf Railroad Co. v. Tabor Grain Co.*, 488 F.Supp. 110, 122 (N.D.Ill.1980). Where Rule 59(e) motions

---

1. On June 10, 2010, the Court entered an Amended Order and Amended Judgment again granting Defendants' Motion to Dismiss for lack of subject matter jurisdiction and dismissing the case. (Dkt. Nos. 35, 36.) The Order was amended only as to the caption.

are merely being pursued "as a means to reargue matters already argued and disposed of and to put forward additional arguments which [the party] could have made but neglected to make before judgment, [S]uch motions are not properly classifiable as being motions under Rule 59(e)" and must therefore be dismissed. *Davis v. Lukhard,* 106 F.R.D. 317, 318 (E.D.Va.1984); *see also Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought—rightly or wrongly."). The Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *School Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.,* 947 F.Supp. 429, 430 (D.Haw.1996).

## DISCUSSION

The Motion asks that the Order and Judgment be altered or amended to prevent manifest injustice and correct clear legal error; challenging the Court's determination that the Plaintiffs' claims assert purely economic interests outside of both NEPA's and NFMA's the zones of interest. (Dkt. No. 33, 34.) The Court erred, Plaintiffs argue, in its application of the Rule 12(b)(1) standard by failing to draw all reasonable inferences in their favor. When properly construed in their favor, Plaintiffs argue, their claims allege injuries falling within the zone of interests suffi-

cient for standing. Plaintiffs focus on the following language from the Court's Order:

> Plaintiffs have not linked their pecuniary interest in mineral resources development to the physical environment or to an environmental interest contemplated by NEPA. Rather, Plaintiffs' injury is the inability to freely travel a road or roads that Plaintiffs wish to travel to access mineral resource development sites. Contrary to NEPA's environmental purpose, Plaintiffs' access on these roads would degrade the environment, not protect the environment.

(Dkt. No. 34, p. 1 *quoting* Dkt. No. 35, p. 11.) In particular, Plaintiffs challenge the Court's statement that "Plaintiffs' access on these roads would degrade the environment, not protect the environment." (Dkt. No. 33, p. 2.) This finding, Plaintiffs contend, is not supported in the record. Plaintiffs now ask the Court to amend its Order and find that "Plaintiffs have linked their pecuniary interest in mineral resource development to the physical environment or to an environmental interest contemplated by NEPA." (Dkt. No. 33, p. 2.) Alternatively, Plaintiffs seek leave to amend their complaint and/or present evidence concerning the Court's finding regarding the use of these roads on the environment. (Dkt. No. 34, p. 6.)

## I. Whether the Court Erred in Applying Rule 12(b)(1)

### A. Rule 12(b)(1) Standard

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a

"factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1988). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989); *Trentacosta v. Frontier Pac. Aircraft Indus.,* 813 F.2d 1553, 1558 (9th Cir.1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) (citing *Thornhill,* 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill,* 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

■ However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine,* 704 F.2d at 1077). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine,* 704 F.2d at 1077 (citing *Thornhill,* 594 F.2d at 733–35). This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper. Applying the above standard to this case, the Court finds as follows.

**B. Zone of Interests**

■ The Complaint filed in this action is 33 pages long and accompanied by 39 pages of exhibits. (Dkt. No. 1.) It alleges five NEPA and NFMA based claims applicable here: failure to adequately describe the "no action" alternative; failure to analyze impact on mining; failure to analyze economic impacts; failure to notify Plaintiffs of proposed action; and failure to evaluate the closure of R.S. 2477 roads. (Dkt. No. 1.) [2] The claims are raised under the Administrative Procedure Act (APA), 5 U.S.C. § 702. *See Ashley Creek Phosphate Co. v. Norton,* 420 F.3d 934, 939 (9th Cir.2005). Standing to sue under these statutes requires the Plaintiffs to establish a final agency action adversely effected them and that, as a result, they suffered an injury that falls within the "zone of interests" of the statutory provision they seek to enforce. *City of Las Vegas, Nev. v. F.A.A.,* 570 F.3d 1109, 1114 (9th Cir. 2009); *see also Western Watersheds Project v. Kraayenbrink,* 620 F.3d 1187 (9th Cir.2010) (quoting *Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1111–12 (9th Cir.2002)). The party asserting federal jurisdiction has the burden of establishing standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The zone of interests applicable here are found in NEPA.[3] "The overall purpose of

---

**2.** Plaintiffs raised eight claims in their complaint but later withdrew claims five, seven and eight pursuant to a Stipulation. (Dkt. Nos. 25, 29.) Claims one, three, and six allege NEPA violations. Claims two and four allege NFMA violations.

**3.** Counts two and four of the Complaint raise claims under NFMA which governs the man-

NEPA is to declare a national commitment to protecting and promoting environmental quality." *Ashley Creek*, 420 F.3d at 945 (citation omitted). Thus, "the protection of the environment falls within NEPA's zone of interests." *Kootenai Tribe of Idaho*, 313 F.3d at 1113 (citations omitted). "[B]ecause NEPA was intended to protect the environment, the harm a NEPA plaintiff asserts must 'have a sufficiently close connection to the physical environment.' " *Silver Dollar Graving Ass'n v. United States Fish and Wildlife Serv.*, No. 07–35612, 2009 WL 166924 (9th Cir., Jan.13, 2009) (quoting *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 778, 103 S.Ct. 1556, 75 L.Ed.2d 534 (1983)).

NEPA's zone of interests do not, however, include solely or purely economic injuries. *See Ashley Creek*, 420 F.3d at 941. "[A] plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA." *Silver Dollar*, 2009 WL 166924, * 1 (quoting *Nev. Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993)). However, standing to sue under NEPA may exist even where the party's interest is primarily economic so long as the party also alleges an "environmental interest or economic injuries that are 'causally related to an act within NEPA's embrace.' " *Ranchers Cattlemen Action Legal Fund v. USDA*, 415 F.3d 1078, 1103 (9th Cir.2005) (citation omitted). Thus, Plaintiffs' in this case must demonstrate a link between their economic interests and NEPA's environmental zone of interests. The Plaintiffs have failed to do so.

## C. Court's Order Applied the Correct Standard

The Court's prior Order concluded "Plaintiffs have not linked their pecuniary interest in mineral resource development to the physical environment or to an environmental interest contemplated by NEPA. Rather, Plaintiffs' injury is the inability to freely travel a road or roads that Plaintiffs wish to travel to access mineral resource development sites." (Dkt. No. 35, p. 12.) In reaching this conclusion, the Court considered the allegations raised in the Complaint as well as the arguments made in the Plaintiffs' response to the Motion to Dismiss and construed the allegations in the light most favorable to the Plaintiffs.

The Complaint's principle allegations challenge that the Defendants failed to compile an accurate assessment of the existing road network so as to properly analyze the status quo in relation to the impact of the road closures in the alternatives and failed to recognize and analyze the impact on mineral exploration and the economy. (Dkt. No. 1.) Paragraphs 30 and 31 of the Complaint state:

30. The lack of an accurate assessment of the existing road network has denied [Plaintiffs], the public, the PNF, and other agencies the ability to properly and thoroughly analyze the environmental and ecological consequences and the interrelated social and economic consequences of the alteration of travel management procedures.

31. The failure of both the Travel Management Rule and the PNF's implementation of the rule to recognize and describe any R.S. 2477 roads within the

---

agement of national forests. NFMA's goals include creating a forest management plan. *See* 16 U.S.C. § 1604(g)(3). The zone of interest applicable here is found in the statute which specifies the consideration and protection of: recreational use, environmental pres-

ervation, and ensuring the continued diversity of plant and animal communities. *See* 16 U.S.C. § 1604(g)(3)(A)-(B). The parties' briefing on the instant Motion addresses only NEPA's zone of interests.

PNF has denied [Plaintiffs], the public, the PNF, and other agencies the ability to properly and thoroughly analyze the environmental and ecological consequences and the interrelated social and economic consequences of the alteration of travel management procedures.

(Dkt. No. 1, ¶¶ 30, 31.)[4] Their interests are intertwined with the environment, Plaintiffs argue, as they seek full and impartial examination of the EIS of the environmental and economic effects of closing the roads Plaintiffs use. (Dkt. No. 26, p. 19.) This is evident, Plaintiffs assert, from the overall nature of the Complaint itself and, specifically, allegations such as those in Paragraph 23 noting Plaintiffs had "engaged in environmental and geophysical studies" in the subject area which required access by the very roads subject to closure. (Dkt. No. 26, p. 14 n. 14.) To this end, Plaintiffs note their geologists, geophysicists, and environmental consultants regularly travel roads in the PNF to further Plaintiffs' business interests and then conclude that because Defendants do not suggest these "business interests are not intertwined with use of these roads ... [they] readily pass[ ] the test." (Dkt. No. 26, p. 15.) In sum, Plaintiffs' position is that their "business interests are intertwined with ... NEPA's objectives." (Dkt. No. 1, p. 1.)

The Court's prior Order considered the Plaintiffs' arguments pointing to their efforts at remediation, studies, and assessment. The Court concluded such tasks were not environmental in nature but were completed in pursuit of Plaintiffs' economic interests in mineral resource development and, therefore, do not fall within the environmental zone of interests. (Dkt. No. 35, p. 13–15.) Though Plaintiffs argue otherwise, the Complaint's allegations center upon activities done for the purposes of furthering Plaintiffs' mining activities. Regardless of any findings concerning mining's impact on the environment,[5] the fact remains the allegations in the Complaint are based on Plaintiffs' mining interests which is purely economic. Having again carefully reviewed the Plaintiffs' Complaint, briefing, arguments, and the record, the Court finds it correctly applied the Rule 12(b)(1) standard in this case by construing the allegations in the light most favorable to the Plaintiffs.

### D. Sediment Load Argument Not Previously Raised

In this Motion, Plaintiffs bring a new basis in support of their argument that their claims are linked to environmental interests sufficient for standing purposes. Plaintiffs now argue their interest in keeping the roads open and maintained for their use in mining exploration is linked to NEPA's objectives because closure of roads may increase sediment load, thereby harming the environment. (Dkt. Nos. 34, 38.) This argument was not previously raised by the Plaintiffs in their initial briefing on the Motion to Dismiss. (Dkt. No. 26.) There, Plaintiffs' arguments centered on compliance with NEPA's requirements,[6] Plaintiffs' regular use and travel in

---

4. Paragraphs 58 and 59 of the Complaint also allege the Travel Management Rule is subject to NEPA's requirements and it failed to require an inventory of existing roads in National Forests in use before designation of roads. (Dkt. No. 1, ¶¶ 58, 59.)

5. Plaintiffs' Motion challenges language in the Court's prior Order regarding the impact continued use of the roads would have on the environment. (Dkt. No. 34, p. 1.) The Court

will address this issue in Section II of this Order.

6. The Plaintiffs argued its case sought "full and impartial examination in the EIS of the environmental and economic effects ... of closing the roads that it uses. In other words, [Plaintiffs'] concerns are intertwined with the environment." (Dkt. No. 26, p. 14) (quotations omitted). There, Plaintiffs pointed to NEPA's requirement that an EIS ex-

the area,[7] and standing for pro-business plaintiffs.[8] There was, however, no mention of the sediment load argument. Further, nowhere in the Complaint is there an allegation regarding increased sediment loads let alone any allegations relating to environmental concerns within the zone of interests. (Dkt. No. 1.) Just the opposite, the Complaint's allegations are all centered on the Plaintiffs' interests in keeping roads in the PNF open and maintained for their use in mining exploration and development.

■ Raising this argument at this stage in a motion to alter or amend is outside the scope and purpose of such motions. See Fed.R.Civ.P. 59(e). A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. See *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999); *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000). Accordingly, the Court denies the motion on this basis.

### E. Plaintiffs' New Sediment Load Argument Fails to Establish Standing

■ Even considering the Plaintiffs' new sediment load argument, the Court finds the Plaintiffs have failed to link their economic interest in mineral resource exploration and development to NEPA's zone of interests. The Court has again

---

plore "the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity." 42 U.S.C. § 4332(2)(C)(iv); NEPA § 102(2)(C)(iv); (Dkt. No. 26, pp. 20–21.) (Plaintiffs' "precise criticism of the EIS is that it fails to contain 'a discussion of the impacts on productivity that are [ ] intertwined with the environment'" and their "economic concern is very much tethered to the environment.")

7. Because its consultants regularly travel the roads at issue, Plaintiffs argued their concern with the EIS, i.e. whether it complies with § 102(2)(C)(iv), is linked to the environment and NEPA's zone of interests. (Dkt. No. 26, pp. 20–22) (Plaintiffs argued they pass the *Ashley Creek* test because "[t]he roads now subject to closure are part of the physical environment examined in the EIS."). Plaintiffs argument was because their interests exist in the same "human environment" that is the subject of the EIS then they fall within NEPA's zone of interests. ("roads now subject to closure are part of the physical environment examined in the EIS." (Dkt. No. 26, pp. 16–17.)) Plaintiffs distinguished their claims from other "failed EIS challenges" and contend they seek "NEPA compliance to ensure sound consideration of environmental, social, and economic issues affecting the very roads that are the subject of the EIS, roads that

[they have] used regularly." (Dkt. No. 26, pp. 9–10.) Plaintiffs conclude that because the roads are physically located in the forest and Plaintiffs are interested in using the roads means the Plaintiffs' interests are intertwined with environmental concerns. (Dkt. No. 26, p. 10.) Shared physical proximity, however, does not necessarily also mean a shared zone of interests.

8. Plaintiffs also spent a great deal of time on the topic of standing for probusiness/corporate plaintiffs versus pro-environmental plaintiffs. In their initial opposition to the Defendants' Motion to Dismiss, the Plaintiffs argued categorizing their interests as "pro-business" as opposed to "pro-environmental" and, therefore, outside NEPA's zone of interest is inconsistent with the principles of prudential standing. (Dkt. No. 26.) Instead, Plaintiffs argue, their interests are in-line with NEPA's requirements as environmental protection and proper adherence to NEPA's procedures is necessary to and in the Plaintiffs best interests. (Dkt. No. 26, pp. 7–8.) Pointing to *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), Plaintiffs contend that business interests may challenge an EIS if they demonstrate that their commercial interests are intertwined with the environmental interests that are the subject of the EIS. (Dkt. No. 26, p. 4.) The Court resolved this argument in the prior Order. (Dkt. No. 35, p. 11.)

reconsidered the allegations raised in the Complaint and has construed those allegations in the light most favorable to the Plaintiffs. Having done so, the Court still finds the allegations do not support Plaintiffs' contention that their economic interests are linked to the statutes' zones of interest. The Plaintiffs' interest in keeping roads open and maintained is economic. Plaintiffs' claims are done for the purpose of ensuring the roads sought to be used by Plaintiffs for their economic purposes will be maintained and open. These economic concerns of the Plaintiffs are not "interrelated with the environmental affects" of the proposed action in this case. *See Ashley Creek,* 420 F.3d at 943.

Plaintiffs point to paragraph 22 of their Complaint as evidence of "linkage between the admitted economic interest of [Plaintiffs] and the environmental interests contemplated by NEPA." (Dkt. No. 38, p. 1.) Paragraph 22 of the Complaint states:

> [Plaintiff] has been involved, consistent with the concepts of multiple-use and sustained yield within the National Forests, in efforts to develop the mineral resources of the Payette National Forest in a fashion that minimizes and/or mitigates and remediates environmental impact and stimulates human welfare through economic development.

(Dkt. No. 1, ¶ 22.) Drawing all reasonable inferences in their favor, Plaintiffs contend this demonstrates the Court erred in finding "Plaintiffs' access on these roads would degrade the environment, not protect the environment." (Dkt. No. 38, p. 2 *quoting* Dkt. No. 35, p. 12.) The remediation of environmental impacts referred to in Paragraph 22, Plaintiffs argue, are not limited to mining activities but, instead, their remediation efforts include maintenance of roads for use by themselves and the public in order to reduce the sediment load.

As the Court stated in its prior Order, Paragraph 22's reference to the Plaintiffs' efforts at remediating, minimizing, and mitigating environmental impact are all done in an effort to develop the mineral resources of the PNF. (Dkt. No. 35, pp. 12–13.) The language of Paragraph 22 specifically states the Plaintiffs' activities are "in efforts to develop the mineral resources...." (Dkt. No. 1, ¶ 22.) Likewise, the environmental and geophysical studies referred to in Paragraph 23 of the Complaint were done in "furtherance of its efforts to develop the mineral resources of" the PNF. (Dkt. No. 1, ¶ 23.) Even construing these allegations in favor of the Plaintiffs, the fact remains that the interests alleged in the Complaint are not environmental and not linked to NEPA's zone of interests. Both the studies and assessment activities were done in furtherance of and in efforts to develop mineral resources which are unquestionably economic. The paragraphs relate to the manner in which Plaintiffs pursue their economic mining interests. (Dkt. No. 35, p. 13.)

**F. Plaintiffs' Similar to Intervener's**

Plaintiffs also attempt to liken themselves to Valley County whom this Court allowed to intervene in this matter. The Court disagrees. Valley County's interests fall squarely within the zone of interest protected by NEPA and NFMA; intrinsic and aesthetic enjoyment from and recreational use of the roads. (Dkt. No. 35, p. 18–20.) Plaintiffs, on the other hand, do not allege interests akin to Valley County's. As discussed above, it is clear from the Complaint that the Plaintiffs interests in use and maintenance of the roads begin and end with their pecuniary economic purpose.

**II. Plaintiffs' Objection to Court's Finding**

The Plaintiffs also object to the particular language from the Court's prior order

stating: "Contrary to NEPA's environmental purpose, Plaintiffs' access on these roads would degrade the environment, not protect the environment." (Dkt. No. 34, p. 1 *quoting* Dkt. No. 35, p. 11.) Plaintiffs assert there are no allegations in the pleadings supporting the conclusion that keeping the roads open will degrade the environment as stated in is paragraph. (Dkt. No. 34, p. 1.) The Court agrees with the Plaintiffs regarding this particular statement. (Dkt. No. 34, p. 1.) As such, the Motion to Alter or Amend is granted in this respect and the sentence will be stricken from the Order. The end result, however, remains the same. For the reasons stated in the Court's prior Order and herein, the allegations and claims raised in the Complaint are not within the zones of interests. Accordingly, the Defendants' Motion to Dismiss is well taken and will be granted.

### III. Motion to Amend Complaint

■ Plaintiffs also request an opportunity to amend their complaint and/or to present further evidence. Federal Rule of Civil Procedure 15(a) provides that after responsive pleading has been filed, a party may amend their pleading only by leave of the court or written consent of the adverse party. Such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile. Additionally, the district court may consider the factor of undue delay." *Bowles v. Reade*, 198 F.3d 752, 757–58 (9th Cir.1999) (citation omitted). Having reviewed the record in this matter, the Court denies the request to file an amended complaint.

Plaintiffs seek leave to amend their complaint and offer additional evidence in support of their allegation that the ROD's proposed closure of the roads will harm the environment by increasing sediment load. This, they believe, will satisfy the standing requirement of a link between their interests and NEPA's zone of interests. Such amendment would be futile. This argument fails to show Plaintiffs' economic interests and the environmental effects of the proposed action are intertwined. Even if there is evidence of increased sediment loads resulting from the closure of roads, the fact remains that Plaintiffs' interest here is economic. As discussed above, Plaintiffs desire to keep roads open is driven by their economic interest in exploring and developing mining opportunities in the PNF.[9] This economic mining interest is not linked to NEPA's zone of interests merely by alleging that closing roads might increase sediment load. Plaintiffs' attempts to articulate claims that are linked to the environment continue to be economic injuries in disguise.

The Plaintiffs' allegations, even when construed in their favor, fail to fall within NEPA's zone of interests. As stated in the Court's prior Order, Plaintiffs interests asserted in this action are not within the zone of interests of these statutes as they are raised solely for economic interests. Again, the Plaintiffs' interest in the maintenance and use of the roads at issue arise from their economic mining interests. The interests as alleged in the Complaint here are not intertwined with the environment.

Furthermore, it does not appear Plaintiffs previously raised the argument regarding increased sediment load due to road closures as required by the APA. "In order to seek judicial relief of a NEPA

---

**9.** The Court does not categorically find that pro-business plaintiffs cannot find standing in similar cases. The ruling here is limited to the facts and record in this case.

issue, the [Plaintiffs] were required to first raise their concerns with the agency to allow 'the agency to give the issue meaningful consideration.' " *See Wyoming State Snowmobile Ass'n. v. United States Fish and Wildlife Serv.*, 741 F.Supp.2d 1245, at 1258, No. 09–cv–00095–F, 2010 WL 3743933, * 11 (D.Wyo. Sept.10, 2010) (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 553–54, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)) (citations omitted). "The purpose of this rule is to ensure that reviewing courts do not substitute their 'judgment for that of the agency on matters where the agency has not had an opportunity to make a factual record or apply its expertise.' " *Id.* (citation omitted).

Attached to the Complaint are the Plaintiffs various comments presented to the Defendants during the comment period. (Dkt. No. 1, Ex. 1.) No where in them do the Plaintiffs present the sediment load argument or materials that they now seek to present to the Court.[10] Because it does not appear this issue was raised previously by the Plaintiffs, the Defendants may not have been put on notice or have an opportunity to consider the argument during the administrative process and the Plaintiffs are foreclosed from raising the argument at this stage in these proceedings.

Though it may be that the sediment load argument was raised by another entity, it is unclear whether that happened in this case. *See Id.* ("For NEPA challenges, entities may challenge an issue they failed to address if someone else brought 'suffi-

cient attention to the issue to stimulate the agency's attention and consideration of the issue during the environmental analysis comment process.' ") (citations omitted); *see also Benton County v. United States Dept. of Energy*, 256 F.Supp.2d 1195, 1198–99 (E.D.Wash.2003) ("a plaintiff, or another, must bring sufficient attention to an issue to stimulate the agency's attention and consideration of the issue during the environmental analysis comment process. A failure to do so bars judicial review.") (citations omitted). Regardless of whether it was raised previously, the Court finds the sediment load argument does not establish a link between the Plaintiffs' economic interests and NEPA's zone of interests sufficient for standing purposes. Accordingly, the request to file an amended complaint and/or additional evidence is denied.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Reconsider and/or Alter or Amend Judgment (Dkt. No. 33) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **GRANTED** with respect to the Court's finding on page 11 which, as stated herein, is now **STRICKEN.**

2. The Motion is **DENIED** in all other respects.

---

10. In the administrative appeal, Plaintiff AIMMCO makes reference to "environmental studies" it submitted relating to the Smith Creek road that it claims shows that "vehicle travel on the existing Big Creek area roads does not have measurable negative environmental impact, and that simple, user-constructed maintenance ... significantly enhances the environmental condition." (Dkt. No. 1, Ex. 2.) These studies too do not appear

to address increased sediment loads caused by road closures. Instead, they appear to relate to the environmental impact of vehicle travel on the roads. In the most recent Motion, Plaintiffs attach a different document issued by the FS entitled "Reduction of Soil Erosion on Forest Roads" (Dkt. No. 34–1, Att.A) which they purport to offer as evidence supporting their new sediment load argument. (Dkt. No. 38, p. 3.)